**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------- x
JANE DOE,                                                           :
                                                                    :
                Plaintiff,                :
                                                                    :
            v.                            :   13 Civ. 2802 (AKH)
                                                                    :
LT. GEN. FRANKLIN LEE HAGENBECK,                                    :
BRIG. GEN. WILLIAM E. RAPP, and the                                 :
UNITED STATES OF AMERICA,                                           :
                                                                    :
                Defendants.               :
------------------------------------------------------------------- x

# MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street
New York, New York 10007
Tel.: (212) 637-2761
Fax: (212) 637-2786

CHRISTOPHER CONNOLLY
Assistant United States Attorney
    – Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND ........................................................................................................................2

    A.    Plaintiff's Enrollment at West Point and the Alleged Sexual Assault...................2

    B.    The Instant Lawsuit............................................................................................4

ARGUMENT ............................................................................................................................6

    A.    Standards of Review for Motions to Dismiss Under Rules 12(b)(1) and
           12(b)(6) ...............................................................................................................6

    B.    The *Feres* Doctrine Precludes Plaintiff's FTCA and *Bivens* Claims......................7

    C.    The Discretionary Function Exception Bars Plaintiff's FTCA Claims ................17

    D.    Plaintiff's FTCA Claims for Negligent Supervision, Negligent Training, and
           Abuse of Process Are Not Cognizable Under New York Law.............................19

    E.    Plaintiff's *Bivens* Claims Are Subject to Dismissal Because Defendants
           Hagenbeck and Rapp are Entitled to Qualified Immunity....................................20

    F.    Plaintiff's Little Tucker Act Claim Should Be Dismissed....................................27

CONCLUSION..........................................................................................................................29

# TABLE OF AUTHORITIES

**CASES**                                                                                           **PAGE**

*Aguilar v. Immigration & Customs Enforcement Division of the U.S. Department of Homeland Sec.*,
    811 F. Supp. 2d 803 (S.D.N.Y. 2011)...............................................................24

*Alfaro Motors, Inc. v. Ward*,
    814 F.2d 883 (2d Cir. 1987).............................................................................22

*Arar v. Ashcroft*,
    585 F.3d 559 (2d Cir. 2009).......................................................................22, 24

*Archer v. United States*,
    217 F.2d 548 (9th Cir. 1955) .........................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................ *passim*

*Atuahene v. City of Hartford*,
    10 Fed. App'x 33 (2d Cir. 2001).....................................................................24

*Beckering v. United States*,
    22 Ct.Cl. 30 (1990) .........................................................................................28

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 555 (2007)...........................................................................................7

*Bell v. United States*,
    366 U.S. 393 (1961).........................................................................................27

*Bellamy v. Mount Vernon Hosp.*,
    No. 07 Civ. 1801 (SAS), 2009 WL  1835939 (S.D.N.Y. Jun. 26, 2009) ........24

*Benzman v. Whitman*,
    523 F.3d 119 (2d Cir. 2008)..............................................................................9

*Berkowitz v. United States*,
    486 U.S. 531 (1988).........................................................................................18

*Bivens v. Six Unknown Named Agents of Federal  Bureau of Narcotics*,
    403 U.S. 388 (1971)............................................................................... *passim*

*Black v. Coughlin*,
   76 F.3d 72 (2d Cir. 1996) ................................................................................22

*Boyle v. United Technologies Corp.*,
   487 U.S. 500 (1988) ........................................................................................19

*Chappell v. Wallace*,
   462 U.S. 296 (1983) ................................................................................ *passim*

*Cioca v. Rumsfeld*,
   720 F.3d 505 (4th Cir. 2013) ..........................................................................13

*Collins v. City of Harker Heights*,
   503 U.S. 115 (1992) ........................................................................................26

*Collins v. United States*,
   642 F.2d 217 (7th Cir. 1981) ..........................................................................10

*Colon v. Coughlin*,
   58 F.3d 865 (2d Cir. 1995) ..............................................................................23

*Corey v. United States*,
   124 F.3d 216, 1997 WL 474521 (10th Cir. Aug. 20, 1997) ............................13

*Cottrell v. United States*,
   42 Fed. Cl. 144 (Ct.Cl. 1998) .........................................................................28

*Coulthurst v. United States*,
   214 F.3d 106 (2d Cir. 2000) ............................................................................18

*Davis v. Scherer*,
   468 U.S. 183 (1984) ........................................................................................20

*Day v. Massachusetts Air National Guard*,
   167 F.3d 678 (1st Cir. 1999) ...........................................................................15

*DeShaney v. Winnebago Cnty. Department of Social Services*,
   489 U.S. 189 (1989) ........................................................................................25

*Eckardt v. City of White Plains*,
   87 A.D.3d 1049 (2d Dep't 2011) .....................................................................19

*Feres v. United States*,
   340 U.S. 135 (1950) ................................................................................ *passim*

*Gonzalez v. United States Air Force*,
    88 Fed. App'x 371 (10th Cir. 2004) ..............................................................13, 27

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)..............................................................................................20

*Higazy v. Templeton*,
    505 F.3d 161 (2d Cir. 2007)................................................................................17

*Holland v. City of Poughkeepsie*,
    90 A.D.3d 841 (2d Dep't 2011) ..........................................................................19

*Hunter v. Bryant*,
    502 U.S. 224 (1991)..............................................................................................21

*In re Joint Eastern & Southern Districts Asbestos Litigation*,
    891 F.2d 31 (2d Cir. 1989)...................................................................................18

*Jones v. New York State Division of Military & Naval Affairs*,
    166 F.3d 45 (2d Cir. 1999)....................................................................................8

*Kania v. United States*,
    650 F.2d 264 (Ct. Cl. 1981), *cert. denied*, 454 U.S. 895 (1981) ......................28

*Karoon v. New York City Transit Authority*,
    241 A.D.2d 323 (1st Dep't 1997) ........................................................................19

*Klay v. Panetta*,
    924 F. Supp. 2d 8 (D.D.C. 2013), *appeal docketed*, No. 13-5081 (D.C. Cir. Mar. 14, 2013).…....................................................................................................................8, 14

*Leonard F. v. Israel Disc. Bank of New York*,
    199 F.3d 99 (2d Cir. 1999)...................................................................................27

*Marquet v. Gates*,
    No. 12 Civ. 3117 (ALC)(MHD) (S.D.N.Y. Sept. 11, 2013)........................14, 15

*Martinez v. Simonetti*,
    202 F.3d 625 (2d Cir. 2000).................................................................................20

*Estate of McAllister v. United States*,
    942 F.2d 1473 (9th Cir. 1991) ..............................................................................8

*Mentavlos v. Anderson*,
    85 F. Supp. 2d 609 (D.S.C. 2000)........................................................................10

iv

*Miller v. United States*,
    42 F.3d 297 (5th Cir. 1995) ................................................................................10

*Minneci v. Pollard*,
    132 S. Ct. 617 (2012) ........................................................................................9

*Morse v. West*,
    975 F. Supp. 1379 (D. Colo. 1997), *aff'd*, 172 F.3d 63 (10th Cir. 1999) ..........................10

*Orloff v. Willoughby*,
    345 U.S. 83 (1953) ............................................................................................11

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ................................................................................20, 21, 26

*Polanco v. U.S. Drug Enforcement Admin.*,
    158 F.3d 647 (2d Cir. 1998) ..............................................................................17

*Robinson v. Overseas Military Sales Corp.*,
    21 F.3d 502 (2d Cir. 1994) ................................................................................6

*Rolon v. Ward*,
    345 F. App'x 608 (2d Cir. 2009) ........................................................................23

*Santana-Rosa v. United States*,
    355 F.3d 39 (1st Cir. 1993) ................................................................................17

*Saucier v. Katz*,
    533 U.S. 194 (2000) ..................................................................................21, 25

*Savino v. City of New York*,
    331 F.3d 63 (2d Cir. 2013) ................................................................................20

*Scott v Fischer*,
    616 F.3d 100 (2d Cir. 2010) ..............................................................................24

*Selevan v. New York Thruway Authority*,
    584 F.3d 82 (2d Cir. 2009) ................................................................................7

*Shipping Finance Services Corp. v. Drakos*,
    140 F.3d 129 (2d Cir. 1998) ..............................................................................7

*Sonnenfeld v. United States*,
    62 Fed. Cl. 336 (2004) ......................................................................................28

v

*Talavera v. Arbit,*
    18 A.D.3d 738 (2d Dep't 2005) ...................................................................................19

*Thomas v. Ashcroft,*
    470 F.3d 491 (2d Cir. 2006)........................................................................................22

*Tootle v. USDB Commandant,*
    390 F.3d 1280 (10th Cir. 2004) ....................................................................................9

*United States v. Brown,*
    348 U.S. 110 (1954).......................................................................................................8

*United States v. Gaubert,*
    499 U.S. 315 (1991)...............................................................................................17, 18

*United States v. Johnson,*
    481 U.S. 681 (1987)..................................................................................................8, 12

*United States v. Mitchell,*
    463 U.S. 206 (1983).....................................................................................................26

*United States v. Muniz,*
    374 U.S. 150 (1963).......................................................................................................8

*United States v. Shearer,*
    473 U.S. 52 (1985)................................................................................................ *passim*

*United States v. Stanley,*
    483 U.S. 669 (1987)............................................................................................... *passim*

*United States v. Testan,*
    424 U.S.  392 (1976).....................................................................................................26

*Wake v. United States,*
    89 F.3d 53 (2d Cir. 1996).....................................................................................8, 10, 12

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990).......................................................................................................6

*Wilkie v. Robbins,*
    551 U.S. 537 (2007).......................................................................................................9

## STATUTES

5 U.S.C. § 706(1) ...............................................................................................16

10 U.S.C. § 1552(a)(1) .......................................................................................16

10 U.S.C. § 3075(a)-(b)(2) ..............................................................................2, 10

10 U.S.C. § 801(6)-(7) .......................................................................................16

10 U.S.C. § 802(a)(2) .........................................................................................16

10 U.S.C. § 938 ..................................................................................................16

Little Tucker Act, 28 U.S.C. § 1346(a)(2) ..............................................2, 26, 28

28 U.S.C. § 1346(b)(1) .......................................................................................19

Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA") .............. *passim*

28 U.S.C. § 2679(d)(1) .......................................................................................15

28 U.S.C. § 2680(a) ............................................................................................17

28 U.S.C. § 2680(h) ............................................................................................15

## RULES AND REGULATIONS

Fed. R. Civ. P. 12(b)(1)....................................................................................1, 6, 8

Fed. R. Civ. P. 12(b)(6)....................................................................................1, 7, 8

32 C.F.R. § 581.3(c)(2)(i) ..................................................................................16

Defendants Lieutenant General Franklin L. Hagenbeck ("Lt. Gen. Hagenbeck"), Brigadier General William E. Rapp ("Brig. Gen. Rapp"), and the United States of America (the "United States") (collectively, "Defendants"), by their attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff's Amended Complaint ("Am. Compl.") (Dkt. No. 14) pursuant to Federal Rules of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and 12(b)(6), for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Plaintiff Jane Doe ("Plaintiff") brings common law tort claims against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA"), and constitutional tort claims against Lt. Gen. Hagenbeck and Brig. Gen. Rapp pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971) ("*Bivens*"), relating to her alleged rape by a fellow cadet while she was enrolled at the United States Military Academy ("West Point"). Allegations of sexual assault in the United States military are serious and should in no way be minimized. Sexual misconduct is a crime under the Uniform Code of Military Justice, and reducing sexual assault is a priority for the Department of Defense, which implemented the Sexual Assault Prevention and Response Program in 2005 pursuant to Department of Defense Directive 6495.01. However, even assuming the truth of Plaintiff's factual allegations, the Amended Complaint must be dismissed because the Court lacks subject matter jurisdiction over Plaintiff's FTCA claims and Plaintiff does not state a cognizable claim for relief under *Bivens*.

An unbroken line of Supreme Court precedent makes clear that FTCA and *Bivens* remedies are not available for injuries sustained incident to military service, which includes the

service of West Point cadets.  Plaintiff's claims must therefore be dismissed.  In the alternative,

Plaintiff's FTCA claims are subject to dismissal because they fall within the FTCA's

discretionary function exception and, with respect to three such claims, fail to state a cognizable

claim under New York law. Likewise, Plaintiff's constitutional tort claims should also be

dismissed because the Amended Complaint fails to allege that Lt. Gen. Hagenbeck and Brig.

Gen. Rapp were personally involved in violating Plaintiff's clearly established constitutional

rights, which is a prerequisite for stating a *Bivens* claim and overcoming an assertion of qualified

immunity.  Finally, Plaintiff's breach of contract claim pursuant to the Little Tucker Act, 28

U.S.C. § 1346(a)(2), fails because Plaintiff does not identify a statute, regulation, or contractual

provision entitling her to monetary relief and, indeed, military enlistment contracts cannot form

the basis for Tucker Act claims.  Accordingly, the Amended Complaint must be dismissed.

## BACKGROUND

### A.      Plaintiff's Enrollment at West Point and the Alleged Sexual Assault

West Point is a federal service academy that trains its cadets to become officers of the

United States Army ("Army").  *See* Am. Compl. ¶ 15.  The Army pays for cadets' education and

training, and cadets commit to serve in the Army upon graduation.  *See id.* ¶ 11.  In June 2008,

Plaintiff accepted West Point's offer of admission, signed an Oath of Allegiance, and enrolled at

West Point.  *See id.*  As a West Point cadet, Plaintiff was a member of the Army.  *See* 10 U.S.C.

§ 3075(a)-(b)(2) (the "Regular Army is a component of the Army" and "includes . . . cadets of

the United States Military Academy . . . .").

Lt. Gen. Hagenbeck and Brig. Gen. Rapp held high-ranking positions at West Point

during all or part of the period of Plaintiff's enrollment.  Lt. Gen. Hagenbeck was the

Superintendent of West Point from 2006 to 2010, and chaired West Point's Sexual Assault

2

Review Board.  Am. Compl. ¶ 5.  Brig. Gen. Rapp was Commandant of Cadets at West Point from 2009 to 2011.  *Id.* ¶ 6.

Plaintiff alleges that in May 2010, towards the end of her second year at West Point, she was raped by a fellow cadet, identified in the Amended Complaint by the pseudonym "Robert Smith," after drinking alcohol that Smith gave her.  *See id.* ¶¶ 56-63.  The alleged rape occurred in an academic building on the West Point campus that Plaintiff and Smith had entered after leaving their dorm after Taps.  *Id.* ¶¶ 60-61.  Plaintiff does not remember the details of the attack, *id.* ¶ 80, but awoke the next morning "with dirt on her clothes and hair, bruises on her lower back, and blood between her legs," *id.* ¶ 81.  When Plaintiff confronted Smith, he confirmed that they had slept together but said that he believed it was consensual.  *Id.* ¶ 64.  Smith is not named as a party to this lawsuit.

Thereafter, Plaintiff went to the Mologne Cadet Health Clinic, where she received emergency contraception, tests for sexually transmitted diseases, and a vaginal exam.  *Id.* ¶¶ 65-67.  According to Plaintiff, the nurse who treated her did not perform a forensic collection of evidence of the alleged sexual assault.  *Id.* ¶ 67.  Later that same day, Plaintiff attended a regular appointment with a psychiatrist who had been treating her for anxiety.  *See id.* ¶¶ 54, 69.  After Plaintiff told the psychiatrist about the alleged sexual assault, the psychiatrist referred her to West Point's Sexual Assault Response Counselor, who in turn explained to Plaintiff that she could file either a "restricted" or an "unrestricted" report concerning the incident.  *Id.* ¶¶ 69-70.  Plaintiff filed a "restricted" report, meaning that the report would remain confidential and no investigation would be initiated.  *See id.* ¶¶ 37, 71.[1]  Plaintiff states that she "felt that she had no option but to file a restricted report" because "she believed that her reputation would be in

---

[1]     Had Plaintiff opted to file an "unrestricted" report, the alleged perpetrator's superiors would have been informed and an investigation would have been initiated.  *See id.* ¶ 37.

jeopardy if she filed an unrestricted report, and that other cadets would retaliate against and ostracize her." *Id.* ¶ 71.  Moreover, she feared that by filing an unrestricted report she could be punished for leaving her dorm after Taps and consuming alcohol.  *Id.*  Plaintiff does not allege that either Lt. Gen. Hagenbeck or Brig. Gen. Rapp was ever made aware of her allegations or was involved in any way in the aftermath of the alleged sexual assault.

According to Plaintiff, "[h]er anxiety after the sexual assault became intolerable."  *Id.* ¶ 76.  On August 10, 2010, she informed West Point of her resignation, and on August 13, 2010, she was honorably discharged.  *Id.*  Thereafter, she earned a degree from a civilian college.  *Id.* ¶ 77.

## B.      The Instant Lawsuit

Plaintiff commenced the instant lawsuit on or about April 26, 2013.  The Amended Complaint includes five common law tort allegations against the United States pursuant to the FTCA.  These claims stem from Plaintiff's assertion that West Point's policies and procedures for preventing sexual misconduct, reporting and investigating alleged sexual assaults, and punishing perpetrators are inadequate.  Plaintiff alleges that "Defendants Hagenbeck and Rapp and other West Point officials" (1) negligently supervised male cadets, including Smith, by failing to investigate, punish, and condemn sexual harassment and assault, and negligently supervised West Point staff members in their handling of sexual assault reports, *see id.* ¶¶ 110-13; (2) negligently trained West Point cadets in preventing sexual assaults, and negligently trained West Point staff in responding to sexual assault reports, *see id.* ¶¶ 114-17; (3) "negligently established, promulgated, and implemented the inadequate policies that caused [Plaintiff] to be sexually assaulted," *id.* ¶ 119; (4) "created an unreasonable risk of causing [Plaintiff] emotional distress" by creating and maintaining inadequate policies concerning sexual

4

assault, failing to discipline assailants, and tolerating sexually aggressive conduct, *id.* ¶¶ 120-21; and (5) abused legal process by failing to investigate and punish instances of sexual assault and operating a system that discouraged the filing of unrestricted reports or criminal charges, in order "to conceal the true extent of the sexual violence at West Point," *id.* ¶¶ 122-23.

Plaintiff's *Bivens* claims are similar to her FTCA claims insofar as they rest on Lt. Gen. Hagenbeck's and Brig. Gen. Rapp's purported implementation and oversight of allegedly deficient policies and procedures concerning sexual assault at West Point, rather than on their conduct with respect to Plaintiff's alleged rape or its aftermath.  Plaintiff alleges that Lt. Gen. Hagenbeck and Brig. Gen. Rapp are liable to her individually because they (1) were "the highest-ranking officers in the West Point sexual harassment program" during the academic year in which the alleged rape occurred, and Lt. Gen. Hagenbeck was responsible for "implement[ing]" West Point's allegedly inadequate sexual assault policies, *see id.* ¶ 34; (2) "sent the message to male cadets that they would tolerate sexual violence at West Point" by failing to adequately punish perpetrators, *id.* ¶ 39; (3) "implemented harmful training and education on sexual assault and harassment, which further engrained a 'blame the victim' mentality" among cadets, *id.* ¶ 40; and (4) "knew or should have known that their policies were inadequate to protect women and discourage sexual violence on campus," *id.* ¶ 46, but nonetheless "failed to act or acted with deliberate indifference to the evidence of pervasive sexual assault and harassment" at West Point, *id.* ¶ 50.  Based on these factual allegations, Plaintiff brings constitutional tort claims against Lt. Gen. Hagenbeck and Brig. Gen. Rapp for violations of her Fifth Amendment due process rights, *see id.* ¶¶ 79-95, and Fifth Amendment equal protection rights, *see id.* ¶¶ 96-100.

Plaintiff also brings a claim for breach of the covenant of good faith and fair dealing pursuant to the Little Tucker Act.  *See id.* ¶¶ 101-08.  She characterizes the Oath of Allegiance

that she signed upon enrolling at West Point as "a valid educational contract and service agreement" with the United States. *Id.* ¶ 102. Plaintiff alleges that by "creating and enforcing policies and practices that fostered a sexually hostile environment and toleration of violence against women, failing to adequately punish perpetrators of sexual assault, failing to adequately train cadets, faculty and administrators, and endorsing a misogynistic culture" at West Point, the United States deprived Plaintiff of her right to receive the education promised by the Oath of Allegiance. *Id.* ¶ 106. Furthermore, she claims that the United States acted in bad faith by inducing women to enter into contractual obligations and then "engaging in conduct that was designed to oppress women at West Point." *Id.* ¶ 107. Plaintiff alleges that "if she failed to satisfy her obligation to serve on active duty under the contract [*i.e.*, the Oath of Allegiance], the United States would have an enforceable right to recoup the full costs of her education," *id.* ¶ 103, but she does not allege that the United States sought recoupment of any funds following her resignation from West Point. In fact, Plaintiff acknowledges that because she resigned from West Point prior to the start of her third year, she was not required to repay any costs associated with her education. *Id.* ¶ 76.

## **ARGUMENT**

### A.     **Standards of Review for Motions to Dismiss Under Rules 12(b)(1) and 12(b)(6)**

On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that subject matter jurisdiction exists over her claims. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994); *see also Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990) ("It is well established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue."). At the pleading stage, in determining whether subject matter jurisdiction

exists, the court must "accept as true all material factual allegations in the complaint," but must refrain from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (citations omitted).

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion, a court must "assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Allegations that are "no more than conclusions[ ] are not entitled to the assumption of truth," and " 'naked assertions' devoid of 'further factual enhancement,' " and "the-defendant-unlawfully-harmed-me accusation[s]" are not sufficient to show that a plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 678-79 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 557 (2007)). Nor must a court accept as true "legal conclusions" or " 'a legal conclusion couched as a factual allegation.' " *Id.* Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

**B.     The *Feres* Doctrine Precludes Plaintiff's FTCA and *Bivens* Claims**

The bulk of the Amended Complaint is subject to dismissal because long-standing and unambiguous Supreme Court precedent, beginning with *Feres v. United States*, 340 U.S. 135 (1950), holds that FTCA claims against the United States and *Bivens* actions against officers in their individual capacities may not be maintained where, as here, the alleged injuries to military personnel arise out of activity incident to military service.[2]

---

[2]     The Second Circuit has observed that "the proper vehicle for dismissing a *Feres*-barred

In *Feres*, the Supreme Court unanimously held that "the Government is not liable under the [FTCA] for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146. Since *Feres*, it has been "well established that a member of the United States military may not seek damages for injuries suffered incident to military service." *Jones v. New York State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999); *see also Estate of McAllister v. United States*, 942 F.2d 1473, 1479 (9th Cir. 1991) (the *Feres* doctrine "provides a broad blanket of immunity to protect the government against allegations of negligence in military contexts").

The *Feres* decision rested on three rationales: (1) the distinctively federal character of the relationship between the Government and members of the armed forces; (2) the existence of statutory disability benefits for service members; and (3) the need to preserve the military discipline structure and prevent judicial involvement in sensitive military matters. *See United States v. Johnson*, 481 U.S. 681, 688-91 (1987); *Wake*, 89 F.3d at 57. Of these, the third rationale is most significant: *Feres* is "best explained by the 'peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the [FTCA] were allowed for negligent orders given or acts committed in the course of military duty.'" *United States v. Muniz*, 374 U.S. 150, 162 (1963) (quoting *United States v. Brown*, 348 U.S. 110, 112 (1954)). Accordingly, "the *Feres* doctrine has been applied consistently to bar all suits on behalf of service members against the Government based upon service-related injuries." *Johnson*, 481 U.S. at 687-88. "Rather than

---

FTCA claim is a dismissal for lack of subject-matter jurisdiction." *Wake v. United States*, 89 F.3d 53, 57 (2d Cir. 1996); *see also id.* (the question of whether the *Feres* doctrine bars an FTCA claim is "necessarily one of jurisdiction"). In applying the *Feres* doctrine in the *Bivens* context, courts have granted motions to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. *See, e.g., Klay v. Panetta*, 924 F. Supp. 2d 8, 11 (D.D.C. 2013), *appeal docketed*, No. 13-5081 (D.C. Cir. Mar. 14, 2013).

focusing on the presence or absence of the *Feres* rationales, then, the relevant question is whether [the plaintiff's] alleged injuries arose 'incident to service.'" *Tootle v. USDB Commandant*, 390 F.3d 1280, 1282 (10th Cir. 2004).

The Supreme Court has extended the *Feres* doctrine to preclude constitutional tort claims incident to service brought against military officers pursuant to *Bivens*. *See United States v. Stanley*, 483 U.S. 669, 678-86 (1987); *Chappell v. Wallace*, 462 U.S. 296, 298-99 (1983). *Bivens* recognized an implied cause of action for money damages against federal officers in their individual capacities for alleged Fourth Amendment violations. *See* 403 U.S. at 397. Since then, however, the Supreme Court has been "reluctant to extend *Bivens* liability." *Iqbal*, 556 U.S. at 675. The Supreme Court has extended a *Bivens* remedy outside of the Fourth Amendment context in only two other cases, and in each case it has reviewed since 1980, it has "decided against the existence of such an action," *Minneci v. Pollard*, 132 S. Ct. 617, 622 (2012). Thus, a *Bivens* remedy is "not an 'automatic entitlement' associated with every governmental infraction." *Benzman v. Whitman*, 523 F.3d 119, 125 (2d Cir. 2008) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). *Bivens* itself established that there may be no implied constitutional remedy in cases involving "special factors counseling hesitation." 403 U.S. at 396.

In extending the *Feres* doctrine to *Bivens* actions, the Supreme Court explicitly held that "special factors counseling hesitation" are present in suits like Plaintiff's because "congressionally uninvited intrusion into military affairs by the judiciary is inappropriate" given the "unique disciplinary structure of the Military Establishment and Congress' activity in the field." *Stanley*, 483 U.S. at 683 (internal quotation marks and citations omitted); *see also Chappell*, 462 U.S. at 299-300 (finding that the "peculiar and special relationship of the soldier to his superiors, and the effects of the maintenance of [damages] suits on discipline" constitute

"special factors" precluding *Bivens* remedy).  Those "special factors" are the same ones that the Supreme Court identified in *Feres*.  340 U.S. at 146.  Accordingly, the Court's "abstention in the inferring of *Bivens* actions [is] as extensive as the exception to the FTCA established by *Feres*," and "no *Bivens* remedy is available for injuries that arise out of or are in the course of activity incident to service."  *Stanley*, 483 U.S. at 680-81, 683-84; *see also Chappell*, 462 U.S. at 298-99.

The foregoing line of Supreme Court precedent precludes Plaintiff's FTCA and *Bivens* claims.  As a West Point cadet, Plaintiff was a member of the military, and courts have consistently held that the *Feres* doctrine applies to service academy cadets just as it does to other service members.  *See* 10 U.S.C. § 3075(a)-(b)(2) (the "Regular Army is a component of the Army" and "includes . . . cadets of the United States Military Academy . . . ."); *Miller v. United States*, 42 F.3d 297, 301 (5th Cir. 1995) (tort claims by United States Naval Academy midshipman barred by *Feres*); *Collins v. United States*, 642 F.2d 217, 218 (7th Cir. 1981) (*Feres* doctrine applied to United States Air Force Academy cadet); *Archer v. United States*, 217 F.2d 548, 552 (9th Cir. 1955) (FTCA claim brought by West Point cadet barred); *Mentavlos v. Anderson*, 85 F. Supp. 2d 609, 622 (D.S.C. 2000) ("The *Feres* doctrine applies to service academy cadets because they are, in fact, members of the relevant military branches.").  As the Second Circuit has recognized, the doctrine even applies to members of the Reserve Officer Training Corps ("ROTC") attending non-military schools.  *Wake*, 89 F.3d at 58-59, 62 (*Bivens* and FTCA claims by ROTC member barred by *Stanley* and *Feres*); *see also Morse v. West*, 975 F. Supp. 1379, 1382 (D. Colo. 1997) (same), *aff'd*, 172 F.3d 63 (10th Cir. 1999) (unpublished table decision).  Plaintiff does not avoid application of the doctrine because she is no longer at West Point.  *See, e.g.*, *Stanley*, 483 U.S. at 671 (plaintiff was discharged from the Army nearly a decade prior to filing suit).

Furthermore, the conduct that Plaintiff attributes to Defendants—supervising West Point's sexual harassment prevention program, *see* Am. Compl. ¶¶ 34, 46-50; implementing training and education programs relating to sexual assault and harassment, *see id.* ¶ 40; administering policies and procedures for reporting and investigating sexual assault claims, *see id.* ¶¶ 70-73; and implementing and overseeing policies and procedures relating to the discipline of cadets found to have committed sexual assaults, *see id.* ¶ 39—constitutes military decision-making. Plaintiff's claims would thus "require judicial inquiry into, and hence intrusion upon, military matters," thereby implicating the "special factors counseling hesitation" that have prevented the Supreme Court from extending FTCA and *Bivens* remedies to this context. *Stanley,* 483 U.S. at 682-83; *see also United States v. Shearer*, 473 U.S. 52, 59 (1985). As the Supreme Court has observed, "'[J]udges are not given the task of running the Army. The responsibility for setting up channels through which . . . grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates.'" *Chappell*, 462 U.S. at 301 (quoting *Orloff v. Willoughby*, 345 U.S. 83, 93-94 (1953)).

Accordingly, Plaintiff's alleged injuries arose out of or were "in the course of activity incident to service." *Stanley*, 483 U.S. at 684 (internal quotation marks and citation omitted). In determining whether activity is incident to service, the Supreme Court has looked to "whether the suit requires the civilian court to second-guess military decisions . . . and whether the suit might impair essential military discipline." *Shearer*, 473 U.S. at 57. In *Shearer*, the Supreme Court found that the fact that plaintiff's "allegation . . . call[ed] into question basic choices about the discipline, supervision, and control of a serviceman" was dispositive, and that *Feres* applied even though the murder that formed the basis for the plaintiff's FTCA claim occurred while the decedent was off duty and away from his military base. *Id.* at 58. In other words, the Supreme

Court emphasized the extent to which the plaintiff's claims necessitated judicial review of military decisions rather than the facts surrounding the plaintiff's alleged injury.  Here, Plaintiff's claims clearly call into question the decisions of high-ranking military officials in determining how to prevent, investigate, and punish sexual assault at West Point, and consideration of those claims would require the Court to pass judgment on those military decisions.

For its part, the Second Circuit has recognized that, in certain circumstances, multiple factors may be probative of the "incident to service" test, and has identified as relevant, *inter alia*, the plaintiff's "status as a member of the military at the time of the incident," the "relationship of the activity to the individual's membership in the service," the "location of the conduct giving rise to the underlying tort claim," "whether the activity is limited to military personnel," and "whether the service member was . . . enjoying a benefit conferred as a result of military service." *Wake*, 89 F.3d at 58.[3]  Consideration of these factors further demonstrates that Plaintiff was engaged in activity incident to military service at the time of the alleged rape. Plaintiff and the alleged assailant were both members of the military at the time of the incident and were present at West Point for the purpose of being educated and trained as Army officers. *See* Am. Compl. ¶¶ 11, 56-57.  The alleged assault occurred in a building on the West Point

---

[3]   It should be emphasized that the inquiry is not whether the injury itself can be considered "incident to service," but rather whether the injury arose out of or was in the course of "activity incident to service." *Stanley*, 483 U.S. at 684.  In *Wake,* for example, the Second Circuit concluded that a ROTC member's injury from a vehicle accident arose out of activity incident to service because at the time of the accident, she was returning from a military physical examination, she was in a position to take the physical because of her affiliation with the Navy, and she was only authorized to be in the vehicle because of that affiliation.  89 F.3d at 59.  *See also Johnson*, 481 U.S. at 689 (considering whether a service member sustained an injury during activity "incident to service—that is, because of his military relationship with the Government . . . .").

campus, to which Plaintiff had access by virtue of her status as a cadet and her military

relationship with the Government. *See id.* at ¶¶ 13-14, 61.  In reviewing a case brought by a

former member of the United States Air Force who alleged that she was sexually assaulted by an

officer at a party, the Tenth Circuit looked to similar factors to reach the conclusion that the

injury arose from activity incident to service. *See Corey v. United States*, 124 F.3d 216, 1997

WL 474521, at *5 (10th Cir. Aug. 20, 1997) (unpublished table decision), *cert. denied*, 522 U.S.

1081 (1998).  Specifically, the Tenth Circuit observed that the plaintiff's "participation in the

party at which her injuries occurred was a consequence of her military status," the "party

occurred on base and was organized and attended by military members," and "[t]hose

participating in the party—including [plaintiff] and the individual defendants—were subject to

military discipline and control." *Id.*; *see also Gonzalez v. United States Air Force*, 88 Fed.

App'x 371, 375-76 (10th Cir. 2004) (unpublished decision) (dismissing FTCA suit brought by

member of the Air Force who was allegedly assaulted by a fellow airman following a party at an

Air Force base).

     Notably, the three courts—including one in this District—that have recently considered

*Bivens* actions practically identical to Plaintiff's claims here have found them barred by *Feres*

and *Stanley*.  In *Cioca v. Rumsfeld*, 720 F.3d 505 (4th Cir. 2013), the Fourth Circuit Court of

Appeals affirmed the dismissal of *Bivens* claims against two former Secretaries of Defense

brought by current and former service members who were allegedly the victims of sexual

assaults.  The Fourth Circuit found that the plaintiffs' allegations concerning the defendants'

oversight of the military's handling of sexual assault claims "f[e]ll within the heartland of the

concerns identified in *Chappell*, *Stanley*, and *Feres*.  The Plaintiffs' allegations directly

challenge the wisdom of a wide range of military and disciplinary decisions, and each directly

13

challenge the decisions made within the ultimate chain of military command." *Id.* at 514 (citation and internal quotation marks omitted). Furthermore, the Fourth Circuit found that the plaintiffs' alleged injuries were incident to military service because "the Plaintiffs allege that the Defendants' command and management, or mismanagement, of the military is the ultimate cause of their injuries." *Id*. at 515. Accordingly, the court concluded that "resolution of Plaintiffs' claims would force us to pass judgment on the merits of the Defendants' military decisions, which Supreme Court precedent has concluded is not within the realm of our judicial branch function." *Id.* at 516.

The United States District Court for the District of Columbia reached the same conclusion in *Klay v. Panetta*, which was also a *Bivens* action brought by service members against high-ranking military officials. After tracing the *Feres-Stanley* line of cases, the court observed that:

> like the plaintiffs in *Feres* and *Stanley*, plaintiffs in this case were all on active duty, under compulsion of orders, subject to military control and discipline, and receiving military pay when they incurred their injuries. Most important, the connection between plaintiffs and those who they claim caused their injuries stemmed from their military relationship and the military system of justice, and plaintiffs expressly attribute their injuries to the manner in which the military leaders executed their responsibilities.

924 F. Supp. 2d at 16. The court thus concluded that, "despite the apparent harshness of the application of *Feres* to the facts before us, we are compelled to conclude that a *Bivens* remedy is not available to plaintiffs." *Id.* at 20 (citation and internal quotation marks omitted).

Last, and most recently, in *Marquet v. Gates*, No. 12 Civ. 3117 (ALC)(MHD) (S.D.N.Y. Sept. 11, 2013) (Dkt. No. 15), a court in this District followed the reasoning of *Cioca* and *Klay* in determining that "judicial abstention was the proper course of action based on controlling Supreme Court precedent," and dismissed the plaintiff's *Bivens* action against high-ranking military officials stemming from her alleged sexual assault. Slip op. at 5. The court found that it

14

was "untenable to claim Plaintiff's injuries do not stem from the relationship between Plaintiff and her time at West Point as a cadet," *id.* at 11, and that judicial consideration of her claims would require precisely the type of "examination into Defendants' action and inaction, decision-making, and systems of discipline, promotion, and enlisting new cadets and service members" that the *Feres* doctrine prohibits, *id.* at 12-13.

Adjudicating Plaintiff's action in this Court "would mean that commanding officers would have to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions." *Shearer*, 473 U.S. at 58. It would necessarily "call into question military discipline and decisionmaking," *Stanley* 483 U.S. at 682, and encroach upon Congress's "plenary constitutional authority over the military," *Chappell*, 462 U.S. at 302. In other words, Plaintiff's lawsuit is the very type of case that the Supreme Court has already reviewed more than once and concluded may not proceed under the FTCA or as a *Bivens* action.[4]

---

[4]    Plaintiff's FTCA claim is also subject to dismissal insofar as she seeks to hold the United States liable for the actions of the alleged assailant, Robert Smith. *See* Am. Compl. ¶ 120 (alleging that Smith "created an unreasonable risk of causing Ms. Doe emotional distress" and that his conduct "caused Mr. Doe's emotional distress"). Smith is not named as a defendant in this action, and Plaintiff never alleges that he was acting within the scope of his employment for purposes of the FTCA when he committed the alleged assault. *See* 28 U.S.C. § 2679(d)(1) (United States shall be substituted as a party in place of a government employee only "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose"); Am. Compl. ¶ 126 (alleging that Lt. Gen. Hagenbeck, Brig. Gen. Rapp, and "other West Point officials" acted within the scope of their employment, but failing to make a similar allegation with respect to Smith). Indeed, the United States has not "scoped" Smith for purposes of this lawsuit. If, as Plaintiff appears to assume, Smith was acting within the scope of his employment, then the United States would be the proper defendant with respect to her FTCA allegations and those claims would be subject to dismissal under the *Feres* doctrine. *See, e.g., Day v. Mass. Air Nat'l Guard*, 167 F.3d 678, 681-83 (1st Cir. 1999) (where individual defendants were held to act within the scope of their employment, Untied States was proper defendant and *Feres* applied). Furthermore, in addition to the *Feres* doctrine's bar, Plaintiff's negligent infliction of emotional distress claim is also subject to dismissal because it arises out of Smith's alleged sexual assault of Plaintiff, and thus falls within the intentional tort exception to the FTCA. *See* 28 U.S.C. § 2680(h) (FTCA waiver of sovereign immunity does not apply to "[a]ny claim arising out of

While "it is irrelevant to a 'special factors' analysis whether the laws currently on the books afford [a plaintiff], or any other serviceman, an 'adequate' federal remedy for his injuries," *Stanley*, 483 U.S. at 683, it may be noted that the FTCA and *Bivens* may not be the only avenues of relief for protecting the interests of military personnel.  Defendants do not take a position regarding whether Plaintiff in this specific instance may maintain an action through alternative means, but, for example, the Administrative Procedure Act allows military personnel to obtain civilian judicial review to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), and Article 138 of the Uniform Code of Military Justice provides that

> Any member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer, who shall forward the complaint to the officer exercising general court-martial jurisdiction over the officer against whom it is made.  The officer exercising general court-martial jurisdiction shall examine into the complaint and take proper measures for redressing the wrong complained of; and he shall, as soon as possible, send to the Secretary concerned a true statement of that complaint, with the proceedings had thereon.

10 U.S.C. § 938; *see also* 10 U.S.C. §§ 801(6)-(7), 802(a)(2) (providing that service academy members are subject to the Uniform Code of Military Justice).  Additionally, the Army Board for Correction of Military Records ("ABCMR") was established to correct military records "to remove an error or injustice," and it "considers individual applications that are properly brought before it."  32 C.F.R. § 581.3(c)(2)(i); *see also* 10 U.S.C. § 1552(a)(1) (enabling ABCMR's creation).

Regardless of where possible alternative methods of redress exist, however, it is plain

---

assault . . . ."); *Shearer*, 473 U.S. at 54-55 ("We read [28 U.S.C. § 2680(h)] to cover claims like respondent's that sound in negligence but stem from a battery committed by a Government employee.").  Finally, if Plaintiff is not alleging that Smith acted within the scope of his employment, then her claims against him are not claims against the United States.

from the unambiguous precedent of the Supreme Court that Plaintiff may not maintain a suit

against Defendants pursuant to either the FTCA or *Bivens*.[5]

## C.      The Discretionary Function Exception Bars Plaintiff's FTCA Claims

In the alternative, if the Court were to find that Plaintiff's FTCA claims are not

susceptible to dismissal pursuant to *Feres*, it would still lack subject matter jurisdiction over

those claims because the actions about which Plaintiff complains fall within the discretionary

function exception to the FTCA.  The discretionary function exception provides that the

Government's waiver of sovereign immunity in the FTCA does not extend to claims "based upon

the exercise or performance or the failure to exercise or perform a discretionary function or duty

on the part of the federal agency or an employee of the Government, whether or not the

discretion involved be abused."  28 U.S.C. § 2680(a).  Congress enacted the discretionary

function exception to "prevent judicial 'second-guessing' of legislative and administrative

decisions grounded in social, economic, and political policy through the medium of an action in

tort."  *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (internal quotation marks omitted);

*accord Santana-Rosa v. United States*, 335 F.3d 39, 42-43 (1st Cir. 1993).  The discretionary

function exception precludes actions seeking recovery for acts or omissions that "involved the

exercise of discretion in furtherance of public policy goals."  *Gaubert*, 499 U.S. at 334.  The

Supreme Court has made clear that protected discretionary conduct "is not confined to the policy

or planning level," but applies to "judgment[s] as to which of a range of permissible courses is

the wisest."  *Id.* at 325.  Thus, the exception applies in a wide variety of settings, including to

---

[5]       Furthermore, although Plaintiff also seeks declaratory relief in connection with her
*Bivens* claims, *see* Am. Compl. ¶ 95, "[t]he only remedy available in a *Bivens* action is an award
for monetary damages from defendants in their individual capacities," *Higazy v. Templeton*, 505
F.3d 161, 169 (2d Cir. 2007); *see also Polanco v. U.S. Drug Enforcement Admin.*, 158 F.3d 647,
650 (2d Cir. 1998) (claim for equitable relief rather than monetary damages improper under
*Bivens*).

decisions that may be of a "routine or frequent nature." *Id.* at 334.

In *Berkovitz v. United States*, 486 U.S. 531 (1988), and *United States v. Gaubert*, the Supreme Court developed a two-part test to determine whether the act or omission complained of constitutes a discretionary function: "(1) the acts alleged to be negligent must be discretionary, in that they involve 'an element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in 'considerations of public policy' or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (citing *Berkovitz*, 486 U.S. at 536; *Gaubert*, 499 U.S. at 315).

The acts or omissions about which Plaintiff complains—which concern the supervision and training of West Point cadets and staff, the implementation and oversight of policies and procedures concerning the reporting and investigation of allegations of sexual assault, and the punishment of perpetrators of sexual assault—are quintessential discretionary functions. To be sure, the prevention and punishment of sexual assault at service academies is a high priority for the Department of Defense, *see, e.g.,* Am. Compl. ¶¶ 21, 47-48, but the decisions made by Lt. Gen. Hagenbeck, Brig. Gen. Rapp, and other West Point officials concerning how best to achieve these objectives were not "controlled by mandatory statutes or regulations." *Gaubert,* 499 U.S. at 328; *see also Berkovitz*, 486 U.S. at 544 (to avoid discretionary function exception, suits must allege violation of a "specific mandatory directive"). Furthermore, those decisions were "susceptible to policy analysis." *Gaubert*, 499 U.S. at 325; *see also In re Joint E. & S. Dists. Asbestos Litig.*, 891 F.2d 31, 37 (2d Cir. 1989) (exception "applies where there is room for policy judgment," not simply where there is an "explicit balancing" of policy considerations). Indeed, the Supreme Court has defined the second prong of the discretionary function analysis expansively, holding that the discretionary function exception protects decisions that "balanc[e]

. . . technical, military, and even social considerations." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 511 (1988).  As discussed above with respect to the *Feres* bar to Plaintiff's claims, those claims necessarily "call into question military discipline and decisionmaking," *Stanley* 483 U.S. at 682, that is intertwined with the military considerations inherent in the administration and oversight of the sexual harassment policies at West Point.

**D.     Plaintiff's FTCA Claims for Negligent Supervision, Negligent Training, and Abuse of Process Are Not Cognizable Under New York Law**

Plaintiff's tort claims for negligent supervision and negligent training also fail because those torts are not recognized under New York law.  FTCA claims are evaluated "in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  Plaintiff alleges that Lt. Gen. Hagenbeck, Brig. Gen. Rapp, and other unnamed West Point officials, acting within in the scope of their employment in New York, negligently failed to supervise and train West Point cadets and staff members.  *See* Am. Compl. ¶¶ 110-118, 126.  The Court must dismiss these claims because, under New York law, a private person would not be liable to Plaintiff for these torts.  *See Holland v. City of Poughkeepsie*, 90 A.D.3d 841, 849 (2d Dep't 2011) (under New York common law, when an employee is "acting within the scope of his employment, the employer may be held liable for the employee's torts under a theory of *respondeat superior*, and no claim may proceed against the employer for negligent supervision or training"); *see also Eckardt v. City of White Plains*, 87 A.D.3d 1049, 1051 (2d Dep't 2011); *Talavera v. Arbit*, 18 A.D.3d 738, 739 (2d Dep't, 2005); *Karoon v. New York City Tr. Auth.*, 241 A.D.2d 323, 324 (1st Dep't 1997).

Similarly, Plaintiff's abuse of process claim fails to state a claim under New York law. In New York, an "abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm

without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003). Here, Plaintiff fails to allege any facts that satisfy the first element of her claim.  Rather than alleging that Defendants issued some legal process that compelled or required forbearance of some act, Plaintiff alleges that West Point officials abused legal process by establishing sexual assault reporting processes that allowed for "restricted" and "unrestricted reports."  *See* Am. Compl. ¶¶ 122-23.  Thus, even if Plaintiff's FTCA claims were not subject to dismissal under *Feres*, it would fail under New York law.

**E.**     **Plaintiff's *Bivens* Claims Are Subject to Dismissal Because Defendants Hagenbeck and Rapp are Entitled to Qualified Immunity**

Even if Plaintiff's *Bivens* claims were not barred by the *Feres* doctrine, they should be dismissed because Lt. Gen. Hagenbeck and Brig. Gen. Rapp are entitled to qualified immunity with respect to those claims.  The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Martinez v. Simonetti*, 202 F.3d 625, 633-34 (2d Cir. 2000) (public officials are entitled to qualified immunity if "their conduct does not violate clearly established constitutional rights" or "it was objectively reasonable for them to believe their acts did not violate those rights") (citation omitted).

The qualified immunity doctrine "recognizes that officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated."  *Davis v. Scherer*, 468 U.S. 183, 195 (1984); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (noting that

"the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims' against government officials [will] be resolved prior to discovery"). Accordingly, the "qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citation omitted).

In determining whether qualified immunity applies, courts should first resolve the threshold question of whether, taken in the light most favorable to the plaintiff, the facts alleged demonstrate that "the officer's conduct violated a constitutional right." *See Saucier v. Katz*, 533 U.S. 194, 201 (2000). If the court determines that the defendant's conduct did not violate a constitutional right, then qualified immunity applies, and no further inquiry is necessary. *See id.* Where the facts alleged do make out a constitutional violation, courts next determine whether the constitutional right was clearly established at the time of the alleged infringement. *See id.* Even where the right alleged to have been infringed was clearly established, however, a public official is still entitled to qualified immunity if he "reasonably believed that his actions did not violate the plaintiff's rights . . . even if that belief was mistaken." *Id.*[6]

Here, at the threshold, the Amended Complaint fails to plead facts sufficient to show a deprivation of Plaintiff's constitutional rights by either Lt. Gen. Hagenbeck or Brig. Gen. Rapp. The Supreme Court has held that a plaintiff "must plead that each Government-official defendant, through the official's own individual actions" violated a clearly established

---

[6]     In *Pearson*, the Supreme Court determined that the sequence of the analysis set forth in *Saucier* was no longer mandatory, *i.e.*, that courts may first assess whether there is a clearly established constitutional right before determining whether the allegations make out a constitutional violation. 555 U.S. at 236. Nonetheless, the Supreme Court recognized that the *Saucier* analysis is "often beneficial," and that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

constitutional right. *Iqbal*, 556 U.S. at 676; *see also Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009). The doctrine of *respondeat superior* does not apply in *Bivens* actions, *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006), and defendants "may not be held liable for damages for constitutional violations merely because [they] held a high position of authority," *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). The Second Circuit has long recognized that a complaint against government officials based on constitutional violations is "fatally defective on its face" when it does not allege the personal involvement of each defendant. *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotations and citations omitted).

Plaintiff does not allege that Lt. Gen. Hagenbeck and Brig. Gen. Rapp were directly involved in, or even knew about, the acts that she alleges injured her, including the alleged sexual assault by a fellow cadet in May 2010, the treatment and counseling she subsequently received from West Point employees, and her decision to file a "restricted" report. *See* Am. Compl. ¶¶ 56-71. Instead of alleging direct participation by Lt. Gen. Hagenbeck and Brig. Gen. Rapp, Plaintiff focuses exclusively on their official responsibilities. In effect, she seeks to hold Lt. Gen. Hagenbeck and Brig. Gen. Rapp liable because they were "the highest-ranking officers in the West Point sexual harassment program." *Id.* ¶ 34. In this regard, Plaintiff pursues the same legal theory that the Supreme Court rejected in *Iqbal*. In *Iqbal*, the plaintiff alleged that Attorney General John Ashcroft and Federal Bureau of Investigation ("FBI") Director William Mueller designated the plaintiff as "a person of high interest on account of his race, religion, or national origin, in contravention of the First and Fifth Amendments"; that, in connection with the plaintiff's detention by the FBI, the Attorney General and FBI Director "knew of, condoned, and willfully and maliciously agreed to subject [plaintiff] to harsh conditions of confinement as a matter of policy"; and that the Attorney General was the policy's "principal architect" and the

FBI Director was "instrumental in [the policy's] adoption, promulgation, and implementation."
556 U.S. at 669 (internal quotations omitted).

Those contentions, the Supreme Court held in *Iqbal*, failed to state a *Bivens* claim. *See id.*
at 680. The Court concluded that "Government officials may not be held liable for the
unconstitutional conduct of their subordinates under a theory of *respondeat superior*," and
rejected the argument that supervisory officials can be liable for mere "knowledge and
acquiescence" in a subordinate's allegedly unconstitutional conduct. *Id.* at 676-77. The Court
further instructed that a *Bivens* claim against a supervisor requires more than "intent as volition
or intent as awareness of consequences; it involves a decisionmaker's undertaking a course of
action because of, not merely in spite of, [the action's] adverse effects[.]" *Id.* at 663 (internal
quotations and citations omitted). Thus, under *Iqbal*, Plaintiff cannot hold Lt. Gen. Hagenbeck
and Brig. Gen. Rapp liable for the conduct of West Point cadets or employees.

Prior to *Iqbal*, the Second Circuit had held that personal involvement of supervisory
defendants could be shown by evidence that they "created a policy or custom under which
unconstitutional practices occurred, or allowed the continuance of such a policy or custom."
*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). To the extent that Plaintiff is attempting to
rely on this *Colon* factor to avoid dismissal under *Iqbal*, she does not allege that either Lt. Gen.
Hagenbeck or Brig. Gen. Rapp created the "male culture of West Point," Am. Compl. ¶ 19, or
the Army's policies concerning sexual harassment and assault, and it is not clear that allegations
that a defendant knew of or acquiesced to a policy, rather than created it, are sufficient post-*Iqbal*
to show personal involvement in the Second Circuit. *See, e.g.*, *Rolon v. Ward*, 345 F. App'x 608,
611 (2d Cir. 2009) ("A supervisory official personally participates in challenged conduct not
only by direct participation, but by (1) failing to take corrective action; (2) creation of a policy or

custom fostering the conduct; (3) grossly negligent supervision, or deliberate indifference to the rights of others."); *Aguilar v. Immigration & Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 814 (S.D.N.Y. 2011) (noting that the Second Circuit "has not yet definitively decided which of the *Colon* factors remains . . . in the wake of *Iqbal*"); *Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801 (SAS), 2009 WL 1835939, at *6 (S.D.N.Y. Jun. 26, 2009) ("Only the first and part of the third *Colon* categories pass *Iqbal*'s muster—a supervisor is only liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a custom or policy under which unconstitutional practices occurred."); *but see Scott v Fischer*, 616 F.3d 100, 108-09 (2d Cir. 2010) (noting in dicta that a supervisor's involvement may be shown if he or she "allowed such a policy or custom to continue," but not addressing the effect of *Iqbal*).

Even under *Colon*, however, the Amended Complaint fails because Plaintiff's allegations are too conclusory to state a claim against either Lt. Gen. Hagenbeck or Brig. Gen. Rapp. Tellingly—and consistent with Plaintiff's attempt to hold them liable due to their high-ranking supervisory positions—practically every factual allegation made against one of these defendants is also made against the other. *See* Am. Compl. ¶¶ 34, 35, 37, 38, 39, 40, 46, 50, 70. These blanket statements, however, are insufficient to permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Arar*, 585 F.3d at 569 (allegation "that 'Defendants—undifferentiated—'denied [plaintiff] effective access to consular assistance, the courts, his lawyers, and family members' . . . . fails to specify any culpable action taken by any single defendant"); *Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the plaintiff's] complaint failed to satisfy

[the] minimum standard" that "a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." (citations and internal quotation marks omitted)). The two allegations made specifically against Lt. Gen. Hagenbeck—that he "implemented new sexual assault policies," Am. Compl. ¶ 34, and recommended a successor who was later censured for an improper relationship with a female employee, *id.* ¶ 51—lack a causal connection to the specific harms Plaintiff claims. The Amended Complaint fails to show how these allegations, even if true, would allow the Court to "draw the reasonable inference" that Lt. Gen. Hagenbeck is personally liable for a West Point cadet's alleged sexual assault of Plaintiff. *See Iqbal*, 556 U.S. at 678. And as for Brig. Gen. Rapp, the Amended Complaint makes no specific claims whatsoever. The Court may thus determine that qualified immunity applies and end the inquiry. *Saucier*, 533 U.S. at 201; *see also Iqbal*, 556 U.S. at 686-87 (reversing denial of motion to dismiss based on a qualified immunity defense where complaint failed to allege sufficient facts showing defendants' personal involvement with the alleged constitutional violations).

Even if the Court were to proceed to the second stage of the analysis, however, Lt. Gen. Hagenbeck and Brig. Gen. Rapp are still entitled to qualified immunity because the Amended Complaint also fails to make allegations showing that the constitutional rights that were allegedly violated—concerning Lt. Gen. Hagenbeck's and Brig. Gen. Rapp's leadership of West Point or their implementation of military procedures and policies related to sexual assault—were clearly established. For example, Plaintiff's due process claim suggests that Lt. Gen. Hagenbeck and Brig. Gen. Rapp had a constitutional duty to protect her from sexual assault. *See* Am. Compl. ¶ 99. But the Supreme Court has only ever recognized a government's affirmative duty to protect an individual where it holds that person in its custody "against his will." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989). Indeed, the Supreme

25

Court has made clear that supervisory officials in the government have no general, constitutionally-based duty to afford protection to subordinate officials against known dangers in the workplace, let alone against criminal conduct by co-workers. *Collins v. City of Harker Heights*, 503 U.S. 115, 125-28 (1992). Moreover, even if Plaintiff could show the violation of clearly established rights, the Amended Complaint fails to demonstrate that Lt. Gen. Hagenbeck and Brig. Gen. Rapp should reasonably have believed that their leadership of West Point violated Plaintiff's individual constitutional rights. The doctrine of qualified immunity therefore protects Lt. Gen. Hagenbeck and Brig. Gen. Rapp from Plaintiff's claims against them. *See Pearson*, 555 U.S. at 231.

**F.      Plaintiff's Little Tucker Act Claim Should Be Dismissed**

Plaintiff's contract claim also fails for lack of jurisdiction and because it fails to state a claim for which relief may be granted. The Little Tucker Act, 28 U.S.C. § 1346(a)(2), provides, in relevant part, that district courts have concurrent jurisdiction with the Court of Federal Claims over "[a]ny . . . civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort . . . ." But 28 U.S.C. § 1346 "is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). In other words, the Little Tucker Act does not create an independent right of action against the United States; instead, a plaintiff bringing a Little Tucker Act claim must identify a statutory, regulatory, or contractual provision providing for payment of money damages for a breach. *Testan*, 424 U.S. at 398; *United States v. Mitchell*, 463 U.S. 206, 216-17 (1983).

26

Here, as a threshold matter, Plaintiff fails to point to any statute, regulation, or provision in her Oath of Allegiance creating a right to money damages for breach of her purported contract with the Army.  *See* Am. Compl. ¶¶ 11-12, 101-08.  Indeed, the Oath of Allegiance is not a contract.  It merely confirms Plaintiff's agreement to serve in the Army following graduation from West Point and spells out the Army's policies concerning cadets who, for various reasons, fail to complete their course of instruction at West Point—it says nothing about either the educational benefits cadets are to receive or a cadet's right to money damages in the event she believes that the Army violated some provision of the Oath.  *See* Declaration of Christopher Connolly dated Sept. 20, 2013, Ex. A (Oath of Allegiance).[7]  And while the Oath of Allegiance specifies that cadets who leave West Point may, under certain circumstances, be required to reimburse the United States for costs, *see id.*; Am. Compl. ¶ 103, Plaintiff does not allege that the United States sought to recoup any costs from her following her resignation from West Point, and she acknowledges that because she resigned prior to the start of her third year she was not required to repay costs associated with her education.  Am. Compl. ¶ 96.  Plaintiff's contract claim should thus be dismissed on this ground.  *Cf. Gonzalez*, 88 Fed. App'x at 377 (dismissing breach of implied contract claim brought by alleged victim of sexual assault at Air Force base in part due to her "inability to find a statute mandating monetary compensation for this type of violation").

Furthermore, even assuming the Oath of Allegiance is an enlistment contract, Plaintiff's claim fails because it is well established that military enlistment contracts cannot form the basis for a Tucker Act claim.  *See, e.g., Bell v. United States*, 366 U.S. 393, 401 (1961) ("[C]ommon-

---

[7]      In considering Defendants' motion to dismiss, the Court may properly consider the Oath of Allegiance because it is a "document[] . . . incorporated in the complaint by reference." *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (internal citation omitted).

law rules governing private contracts have no place in the area of military pay.  A soldier's entitlement to pay is dependent upon statutory right."); *Beckering v. United States*, 22 Ct. Cl. 30, 32 (1990) ("The benefits owing to a military service member are governed by statutes and regulations, and not by general principles of contract law."); *Sonnenfeld v. United States*, 62 Fed. Cl. 336, 338 (2004) ("It is settled law . . . that Tucker Act jurisdiction for cases involving military pay must be based solely upon statute and regulation, not upon contracts of enlistment or other documents relating to enlistment.").  Indeed, more fundamentally, "[i]t is presumed that military employees are appointed and do not hold their positions via employment contracts; thus, military employees do not, as a matter of course, possess enforceable contract rights against the government."  *Cottrell v. United States*, 42 Fed. Cl. 144, 150 (Ct.Cl. 1998) (dismissing contract claim brought by Army officer who resigned after failing to complete officer training course); *see also Kania v. United States*, 650 F.2d 264, 268 (Ct. Cl. 1981), *cert. denied*, 454 U.S. 895 (1981) ("It has long been held that the rights of civilian and military public employees against the government do not turn on contract doctrines but are matters of legal status even where compacts are shown.").

Even assuming jurisdiction, Plaintiff's breach of contract claim fails to state a claim.  In effect, Plaintiff advances her contract claim as a recharacterization of her tort claims.  *See* Am. Compl. ¶¶ 106-07 (alleging that the United States breached its contractual obligations by "creating and enforcing" unfair policies and practices, failing to punish perpetrators of sexual assault, failing to adequately train cadets and West Point employees, "endorsing a misogynistic culture," and "engaging in conduct that was designed to oppress women at West Point").  But such recharacterization of claims is insufficient to state a claim under the Little Tucker Act.  *See*

28

*also* 28 U.S.C. § 1346(a)(2) (no cause of action under the Little Tucker Act where claim

"sound[s] in tort").

## **CONCLUSION**

   For the foregoing reasons, the Court should dismiss the Amended Complaint.

Date: New York, New York
   September 20, 2013

        Respectfully submitted,

        PREET BHARARA
        United States Attorney for the
        Southern District of New York
        *Attorney for Defendants*

     By: /s/ Christopher Connolly
        CHRISTOPHER CONNOLLY
        Assistant United States Attorney
        86 Chambers Street, 3rd Floor
        New York, New York 10007
        Tel.: (212) 637-2761
        Fax: (212) 637-2786
        christopher.connolly@usdoj.gov