USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/13/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                              :
JANE DOE,                                     :
                                              :
                              Plaintiff,      :    **ORDER AND OPINION**
                                              :    **GRANTING IN PART AND**
              -against-                        :    **DENYING IN PART**
                                              :    **DEFENDANTS' MOTION TO**
LT. GEN. FRANKLIN LEE HAGENBECK,              :    **DISMISS COMPLAINT**
BRIG. GEN. WILLIAM E. RAPP, and the           :
UNITED STATES OF AMERICA                       :    13 Civ. 2802 (AKH)
                                              :
                              Defendants.      :
------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

        This case presents a novel legal question: whether the federal judiciary must

refrain from issuing remedial relief and damages for the constitutional deprivation of a woman's

equal protection right to a West Point education free of discrimination and hostility, on the

ground that doing so would interfere with the right and power of the Executive Branch to

command, and the Legislature's right and power to legislate, with respect to the nation's military

forces.

        Plaintiff Jane Doe[1] ("Plaintiff") alleges in her complaint that rampant sexual

hostility at the United States Military Academy at West Point ("West Point") forced her to resign

as a cadet and be honorably discharged in August 2010, before entering her third year. She sues

the Superintendent of West Point, Lieutenant General Franklin Lee Hagenbeck ("Hagenbeck"),

and the Commandant of Cadets at West Point, Brigadier General William E. Rapp ("Rapp")

(collectively, the "Individual Defendants"), the two officers in command of West Point at the

---

[1] By order dated August 15, 2013, I granted Plaintiff's motion, without objection, to proceed under the
fictitious name Jane Doe. *See* Dkt. No. 13.

time of the violations alleged in her complaint, for violating her constitutional rights. She also sues the United States on contract and tort claims.

Defendants Hagenbeck, Rapp, and the United States of America (the "United States") (collectively, "Defendants") move, pursuant to Fed. Rs. Civ. P. 12(b)(1) & (6), to dismiss Plaintiff's claims for lack of subject-matter jurisdiction and for failure to state legally sufficient claims for relief.

I hold in this opinion that Plaintiff has sufficiently alleged rampant hostility toward, and discrimination against, women at West Point; that the Individual Defendants knowingly allowed such practices to continue in violation of statutory obligations requiring them to put them to an end; that judicially-ordered remedies would not compromise the legislative or executive functions of government, including the disciplinary role of the Executive Branch over the nation's military; and that it would be inappropriate at this stage of the case for this Court to refrain from hearing and considering the merits with respect to Plaintiff's equal protection claim. For the reasons discussed in this opinion, I sustain the complaint against Hagenbeck and Rapp on Plaintiff's equal protection claim. However, I find that Plaintiff's due process claim does not sufficiently plead causality to survive a motion to dismiss. I dismiss also the counts against the United States under the Federal Tort Claims Act and the Little Tucker Act.

## I.    The Allegations of the Complaint

### A. *The Alleged Facts*

Hagenbeck was West Point's Superintendent between July 2006 and July 2010, and served as Chair of its Sexual Assault Review Board (the "Board"). The Board served as the primary oversight of West Point's sexual assault prevention program. As West Point's

2

Commandant of Cadets, Rapp was in charge of the administration and training of cadets from 2009 to 2011. Doe alleges that Hagenbeck and Rapp furthered the pervasive culture of sexual violence and gender discrimination at West Point.

Doe alleges that Hagenbeck and Rapp disregarded statutory commands to eliminate sexual violence and gender discrimination. 10 U.S.C. § 4361 provides that the Secretary of Defense and the Superintendent of West Point are to "prescribe a policy on sexual harassment and sexual violence applicable to the cadets and other personnel of the Academy", and provide "required training on the policy for all cadets and other Academy personnel". Further, the Superintendent of West Point is given a statutory responsibility to conduct yearly assessments of the effectiveness of policies, training, and procedures intended to reduce sexual harassment and sexual violence. 10 U.S.C. § 4361(c). The Superintendent of West Point is also required to conduct an annual evaluation of the number of sexual assaults, rapes, and other offenses involving cadets or West Point faculty and report these statistics to the Department of Defense ("DOD"). 10 U.S.C. § 4361(d).

Doe alleges that Hagenbeck and Rapp failed to carry out their statutory responsibilities. Doe alleges numerous examples of sexual assaults, sexual harassments, and failures to punish perpetrators. In one instance, despite repeated complaints by female cadets that male supervisors inappropriately touched them and made unsolicited offensive and sexual comments, Hagenbeck and Rapp simply relieved the supervisors of supervisory duties over the particular female cadets making the complaints, without punishing the offending officers. In another example, a guest speaker on the subject of military ethics concluded his speech by hugging a woman and commenting that he liked hugging women because he liked their

3

"bumps". Despite multiple complaints, West Point failed to respond to correct such offensive conduct.

The West Point administration and faculty openly joked with male cadets about having sex with female cadets, lamenting the lack of "sexual opportunities" at West Point, and advising male cadets to "seize any chance to have sex". Cadets marched through campus shouting offensive lyrics in earshot of faculty and administration who were aware that male cadets sang these songs during "team building" exercises. One example of this aggressive, violent language is excerpted below:

> I wish that all the ladies / were bricks in a pile / and I was a mason / I'd lay them all in style.
>
> I wish that all the ladies were holes in the road / and I was a dump truck / I'd fill 'em with my load.
>
> I wish that all the ladies / were statues of Venus / and I was a sculptor / I'd break 'em with my penis.

Many West Point policies and practices pertaining to sexual health, prevention of assault, and reporting of incidents facially discriminated against women. Female cadets, but not male cadets, were required to submit to annual testing for sexually transmitted diseases ("STDs"). In response to complaints about the policy, West Point's health administrators explained that "it was the Army's opinion that STDs were more harmful to women than men and it was the responsibility of women to prevent their spread". The sexual assault prevention programs taught that the prevention of sexual assault was "a woman's responsibility" and it was the women's job to say "no" when faced with inevitable advances from their male colleagues. Female cadets were informally advised either by other cadets or by West Point personnel that their military careers would suffer if they reported sexual assaults, and they were made to understand that male cadets would not face similarly adverse consequences. During Doe's first

4

year at West Point, male cadets were required to take boxing, and as the only difference in curriculum, female cadets were required to take self-defense classes.

Doe alleges that the annual reports required by 10 U.S.C. § 4361(d) show that the instances of sexual assault and rape—including rapes by multiple offenders—were actually increasing during the Individual Defendants' tenures, and that Hagenbeck and Rapp failed to implement policies and practices to decrease—or at minimum halt the increase of—sexual assault. A 2010 DOD survey stated that 51 percent of female cadets (more than 100 women) and 9 percent of male cadets had been sexually assaulted that year. Yet, only 11 official reports of sexual assault had been filed and only one cadet had been dismissed. The survey stated that approximately 90 percent of sexual assaults at West Point were not reported, and that 61 percent of female cadets chose not to report assaults, believing that doing so would hurt their reputation and expose them to retaliation.

The 2011 DOD Report (the "Report") stated that West Point was only "partially in compliance" with DOD regulations mandating sexual assault training and prevention. The Report concluded that West Point's sexual assault prevention training was "deficient" and failed to meet the minimum standard of annual training for cadets. The Report stated that West Point lacked an institutionalized comprehensive Sexual Assault Prevention Response ("SAPR") curriculum as required by statute, and failed to comply with DOD directives intended to reduce rapes and sexual assaults. Doe alleges that Hagenbeck and Rapp had personal knowledge of these deficiencies, as under the statute it was their responsibility to compile the information for, and compose the substance of, these reports. Despite this knowledge of pervasive sexual violence and harassment, Hagenbeck and Rapp failed to take the appropriate actions to implement their statutory obligations.

5

Doe alleges she suffered from the culture of sexual harassment and sexual assault while at West Point, including from male cadets who pressured her to go on dates with them. As a first-year cadet, Doe was allowed only very limited opportunities to leave campus, and thus could not escape the discriminatory atmosphere she alleges pervaded West Point. As a result of this environment, Doe developed stress and saw a psychiatrist who prescribed a sedative, which had undisclosed side effects of impaired awareness and reactions, as well as memory loss. Doe alleges that due to the sexually hostile environment she began to consider transferring out of West Point in approximately April 2009, less than a year after she signed the Oath of Allegiance, but her commitment to the military and a desire to pursue a career in the Army motivated her to attempt to complete her studies at West Point.

Doe further alleges her own experience of rape and inadequate administrative response. She alleges that during the end-of-term examination period, on or about May 8, 2010, she took a prescribed sedative to help her sleep. A male cadet friend tapped on the window to Doe's room, after midnight, and invited her to come outside and walk with him. In violation of curfew, they went for a walk, entered an unoccupied academic building, and sipped from a bottle of liquor that Doe's friend had brought with him. Doe lost consciousness, but remembers "lying on the concrete floor of a boiler room, not understanding what was going on, and waking in her bed with dirt on her clothes and in her hair, bruises on her lower back, and blood between her legs". Doe alleges that her friend "had forcible, non-consensual intercourse" with her. Doe visited the health clinic the same day, and was given emergency contraception. The next day, Doe confronted her friend, who admitted that they had intercourse, stated that he thought it was consensual, but apologized "that he had no control over his actions because of the alcohol".

Doe returned to the clinic the next day to seek medical treatment for her injuries. The nurse performed a vaginal examination, informed her that she had signs of vaginal tearing, noted a possible sexual assault on Doe's medical records, but did not conduct a forensic examination to collect evidence (as is required by DOD regulations).

West Point had two types of sexual assault reporting:  A "restricted" report does not lead to disciplinary action; an "unrestricted" report identifies the perpetrator and the victim, informs the perpetrator's superiors, and initiates an investigation.  Doe filed a "restricted" report, fearing that an unrestricted report would damage her career prospects, place her reputation in jeopardy, and cause her to be punished for violations of curfew and drinking regulations.  Doe alleges that the 2010 DOD survey found that a majority of female West Point cadets who declined to file unrestricted reports of sexual assault declined because of fears consistent with those held by Doe.

Doe alleges that she could not endure the emotional effect and isolation produced by her experience and the absence of consequences to her rapist, and that she could not risk continuing at West Point into her third year because of the financial consequence of a later resignation.[2]  On August 10, 2010, she resigned.  And, on August 13, 2010, she was honorably discharged.  Doe then enrolled and graduated from a civilian college, but hopes to enroll in Army Corps Officer Candidate School.

Doe alleges that she signed an Oath of Allegiance upon her enrollment at West Point, equivalent to an educational services contract.  By this contract, she alleges, she had a reasonable expectation of receiving a West Point education free of tuition, room, and board from

---

[2] West Point classifies its cadets in reverse chronological order, so that a "fourth year cadet" is a cadet in his first year of schooling.  In the interest of common understanding, this opinion refers to a cadet in his first year of schooling as a "first year cadet."

West Point in exchange for her commitment to enter military service upon graduation as a commissioned officer.

### B.  *The Alleged Claims*

Doe's complaint alleges four claims for relief.  First, Doe alleges that the Individual Defendants are liable for violation of her Fifth Amendment Due Process right as proximate causes of her rape by a fellow cadet.  Doe alleges that Hagenbeck and Rapp created and maintained a dangerous environment at West Point, culminating in her rape and resignation from West Point.

Second, Doe alleges that the Individual Defendants are liable to her for violation of her Fifth Amendment Equal Protection right.  Doe alleges that the sexually hostile environment created and perpetuated by the Individual Defendants at West Point placed her at high risk of harm because of her gender, and denied her the right to be free of gender-based discrimination.

Third, Doe alleges that the United States is liable to her pursuant to 28 U.S.C. § 1346(a)(2) (the "Little Tucker Act")[3] for breach of the covenant of good faith and fair dealing.  Upon acceptance to West Point, Doe signed an Oath of Allegiance, which she alleges is an educational contract and service agreement.  Doe alleges that the United States acted in bad faith by engaging in conduct that was designed to oppress women at West Point, after inducing them

---

[3] District Courts have concurrent jurisdiction with the United States Court of Federal Claims to hear claims for less than $10,000 against the United States under the Tucker Act of 1887.  *See* 28 U.S.C. § 1346(a)(2).  This is known as the "Little Tucker Act".  The United States Court of Federal Claims has exclusive jurisdiction for claims in excess of $10,000 against the United States under the Tucker Act of 1887.  *See* 28 U.S.C. § 1491.

to enter into contractual obligations, and that she was therefore deprived of her reasonable expectation of contractual education benefits.

Last, Doe alleges that the United States is liable to her under the Federal Tort Claims Act ("FTCA") for negligent supervision of male cadets and staff members, negligent training of male cadets and staff members, the negligence of the Individual Defendants and other staff members, negligent infliction of emotional distress, and abuse of process.

## II.    Discussion

### A.    *The Standards Governing Motions to Dismiss*

When considering a motion to dismiss, I accept all well-pled factual allegations in the complaint as true, and draw all reasonable inferences in plaintiff's favor. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). If, however, the complaint does not plead facts that "plausibly give rise to an entitlement for relief", I must dismiss it. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### B.    *The Right to Equal Protection of the Laws*

In 1996, the Supreme Court held that state policies denying women admission to military colleges violated their right to equal protection of the laws, in violation of the federal Constitution. U.S. Const., Amend. V; *United States v. Virginia*, 518 U.S. 515 (1996). Virginia Military Institute ("VMI") was a public state institution intending to produce "citizen-soldiers", but offered admission only to men. The Supreme Court ruled that the categorical exclusion of

9

women denied them equal protection of the laws, and that "neither federal nor state government acts compatibly with the equal protection principle when a law or official policy denies women, simply because they are women, full citizenship stature — equal opportunity to aspire, achieve, participate in and contribute to society based on their individual talents and capacities." *Id.* at 532.

The Equal Protection Clause of the Fifth and Fourteenth Amendments of the United States Constitution confers a "federal constitutional right to be free from gender discrimination". *Davis v. Passman,* 442 U.S. 228 (1979). Doe sues based on this fundamental and clear constitutional protection. *See also Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009); *United States v. Virginia*, 518 U.S. 515 (1996). "When—as alleged here— sexual harassment includes conduct evidently calculated to drive someone out of the workplace, the harassment is tantamount to sex discrimination." *Annis v. Westchester*, 36 F.3d 251, 254 (2d Cir. 1994); *cf. Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134 (2d Cir. 1993) ("Sexual harassment of women constitutes disparate treatment because of gender, and is actionable under Section 1983."); *Hayut v. State University of New York*, 352 F.3d 733 (2d Cir. 2003); *Gierlinger v. New York State Police*, 15 F.3d 32 (2d Cir. 1994).

Doe claims in this case that at West Point one law exists for men and another law exists for women. Doe's allegations, if proven, clearly demonstrate that the policies and procedures at West Point violate the Equal Protection Clause. The United States Constitution is not an aspirational document called upon only when convenient to implement; it is the highest law of the land and it commands obedience.

Doe's claim echoes the concerns so forcefully identified in *VMI*. In *VMI*, women were denied admission into a state-financed university preparing individuals for military service,

10

simply because they were women. Just as state-financed schools preparing applicants for the

military have a constitutional obligation to treat gender alike, a federally-financed academic

institution like West Point cannot have one law for men and another law for women, or, as Doe

alleges, policies that favor men while subjecting women to hostile and discriminatory treatment.

       C. *Implied Rights of Action for Constitutional Violations*

          Private citizens may sue individual tortfeasors for money damages if, under color

of law, they violate a plaintiff's constitutional rights, even in the absence of specific statutory

authorization. "Where federally protected rights have been invaded, it has been the rule from the

beginning that courts will be alert to adjust their remedies so as to grant the necessary relief."

*Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971),

quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946). *See also Butz v. Economou,* 438 U.S. 478, 504

(1978) ("[T]he decision in *Bivens* established that a citizen suffering a compensable injury to a

constitutionally protected interest could invoke the general federal-question jurisdiction of the

district courts to obtain an award of monetary damages against the responsible federal official.").

          In 1979, the Supreme Court extended *Bivens* claims to cover the equal protection

component of the Fifth Amendment's due process clause, allowing private citizens to sue under

*Bivens* for gender discrimination. *Davis v. Passman*, 442 U.S. 228 (1979). In *Davis v. Passman*,

a former congressional staffer sued a United States Congressman for gender discrimination.

Davis was hired by then-Congressman Otto E. Passman as a deputy administrative assistant.

After a short five-month tenure, Passman terminated Davis via a written letter. The letter

explained that while Davis was clearly "able, energetic, and a very hard worker," she could not

perform the job any longer because "it was essential that the understudy to my Administrative

Assistant be a man". *Id.* at 230. Davis sued Passman, alleging that terminating her because of her gender violated the Fifth Amendment equal protection component.

The Supreme Court agreed with Davis, holding that "a cause of action and a damages remedy can also be implied directly under the Constitution when the Due Process Clause of the Fifth Amendment is violated". *Id.* The Court found that "first … petitioner asserts a constitutionally protected right; second, that petitioner has stated a cause of action which asserts this right; and third, that relief in damages constitutes an appropriate form of remedy." *Id.* at 234. *Davis*, therefore, provides the *Bivens*-type remedy for gender discrimination under which Doe brings her claim. A *Bivens* claim is brought, not against the government, but against individuals who, under color of law, violate a plaintiff's constitutional rights.

Doe alleges that Hagenbeck and Rapp were responsible for failing to implement the sexual assault prevention policies that DOD mandated for West Point. She alleges that as part of this responsibility, they compiled the DOD reports which documented pervasive gender discrimination and disturbingly high levels of sexual assaults and violence. Doe has provided concrete examples of such gender discrimination, including, *inter alia*, the pervasive frequent sexual assaults and rapes; mandatory annual STD testing for female cadets but not for male cadets because women are "responsible" for stopping the spread of STDs; the fact that male cadets regularly march through the campus shouting their desire to break women with their penises; and the comprehensive reports showing that *over half* of female cadets at West Point were sexually assaulted, and that West Point's sexual assault prevention programs and reporting mechanisms were "deficient," with no—or inadequate—steps being taken to repair the deficiency.

Doe has also sufficiently shown Hagenbeck and Rapp's personal responsibility for the discriminatory policies and practices. Doe's pleading satisfies *Ashcroft v. Iqbal*, which held that plaintiff in a *Bivens* or § 1983 action must plead that each defendant purposefully violated the constitution through his own individual actions. 556 U.S. 662, 666–67 (2009). To satisfy *Iqbal* in this circuit, "'[t]he personal involvement of a supervisory defendant may be shown by evidence that … the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom." *Scott v. Fischer*, 616 F.3d 100, 109-10 (2d Cir. 2010); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). *See also Alli v. City of New York*, 2012 WL 4887745, at *5 (S.D.N.Y. Oct. 12, 2012); *Bellamy v. Mount Vernon Hosp.*, 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009). Doe's complaint sufficiently shows personal responsibility on the part of Hagenbeck and Rapp. *Iqbal*, 556 U.S. 662 (2009). A claim is facially plausible when the factual allegations, not the legal conclusions, "allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The "plausibility standard is not akin to a probability requirement but it asks for more than a sheer possibility that a defendant has acted unlawfully". *Id.* Doe's complaint meets this standard.

### C. *Defendants are not Entitled to Qualified Immunity*

Hagenbeck and Rapp are not entitled to qualified immunity. A public official is entitled to qualified immunity if his actions do not violate clearly established rights of which a reasonable person, at the time, would have known, or if it was objectively reasonable for the public official to believe that his actions were lawful. *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191-92 (2d Cir. 2006).

A right is clearly established at the time of infringement if the Second Circuit and Supreme Court cases have held that the right exists, and have defined it with reasonable specificity. *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010). The right to be free from gender discrimination under the Equal Protection Clause of the United States Constitution clearly was established at the time, and both the Supreme Court and Second Circuit had said as much. *See, e.g., Davis v. Passman,* 442 U.S. 228 (1979); *United States v. Virginia*, 518 U.S. 515 (1996); *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009). The government argues that Hagenbeck and Rapp should have qualified immunity because their implementation of constitutional and statutory commands to end gender discriminated reflected discretionary conduct, and they are entitled to qualified immunity for discretionary conduct.

The government's argument fails. Although some discretionary actions are protected by qualified immunity, this protection does not extend to excuse discretionary acts that violate the federal Constitution. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Hagenbeck and Rapp cannot argue that (i) equal treatment of men and women was not a clearly established constitutional right; (ii) they did not know of that right, or (iii) they were not obliged to confer such equal treatment. At this stage, in opposition to a motion to dismiss, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense". *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). Hagenbeck and Rapp's motion to dismiss, based on their allegedly having exercised discretion, must be denied.

D.    *Exceptions to Rights of Action When Injuries Are Incurred Incident to Military Service*

U.S. courts have developed a strong policy against judicial involvement in military matters, even where constitutional rights have been compromised. *See, e.g., Feres v. United States*, 340 U.S. 135 (1950); *Chappell v. Wallace,* 462 U.S. 296 (1983). The cases generally are in the context of suits against the Government under the FTCA, but the doctrine is applied also to actions against superior officers for violations of the Constitution and statutes of the United States under color of law. *See, e.g., Chappell*, 462 U.S. at 303–04. This section discusses whether, in light of this policy, the facts that Doe alleges in her complaint may be reviewed by this Court.

1.    *The* Feres *Doctrine*

In *Feres v. United States*, 340 U.S. 135 (1950), the United States Supreme Court reviewed three cases where enlisted service men on active duty suffered deaths or injuries from the negligence of others in the military, and they or their next of kin sued the Government under the FTCA to recover money damages. In two cases, there had been medical malpractice by U.S. Army surgeons; in the third case, a soldier died when an army barracks caught fire from a defective heating plant. The "common fact underlying the three cases [was] that each claimant, while on active duty and not on furlough, sustained injury due to negligence of others in the armed forces". *Id.* at 137. The Supreme Court held that "service-connected injuries" could not be made the basis of lawsuits under the FTCA. *Id.* at 139.

In *Chappell v. Wallace*, the U.S. Supreme Court extended *Feres* to "*Bivens*-type claims". 462 U.S. 296, 304 (1983). In *Chappell*, five enlisted men serving on a combat ship sued their officers alleging that they were assigned to undesirable duties and were given low

15

performance evaluations because of their race, in violation of the Constitution and laws of the
United States. *Bivens*, the Supreme Court held, should not be applied if there were "special
factors counseling hesitation". *Chappell*, 426 U.S. at 298, quoting *Bush v. Lucas*, 103 S. Ct.
2404, 2411 (1983). The Supreme Court ruled that it understood *Feres* as denying a right to sue
based on the "peculiar and special relationship of the solider to his superior, [and] the effects on
the maintenance of such suits on discipline . . .". *Chappell*, 462 U.S. at 299, quoting *United
States v. Muniz*, 374 U.S. 150, 162 (1963). As the Court stated, "[c]ivilian courts must, at the
very least, hesitate long before entertaining a suit which asks the court to tamper with the
established relationship between enlisted military personnel and their superior officers; that
relationship is at the heart of the necessarily unique structure of the military establishment."
*Chappell*, 462 U.S. at 300. The need to insulate the military's disciplinary structure from
judicial inquiry constituted a "special factor counseling hesitation" against affording a *Bivens*
remedy to plaintiffs. *Chappell*, 462 U.S. at 304.

    In *United States v. Stanley*, 483 U.S. 669 (1987), an Army sergeant on active
duty, having volunteered to join a test of the effectiveness of protective clothing and equipment
against chemical warfare, was also subjected to a test of the effects of LSD (lysergic acid
diethylamide) on military personnel. Without Sergeant Stanley's consent or knowledge, the
Army gave him four doses of LSD in the course of a month, and then asked him for consent.
Stanley refused, and began to suffer hallucinations, incoherence, and memory loss from the LSD
administered to him. The drug caused him to awaken at night and, without knowing it, violently
to beat his wife and children. The Army discharged Stanley, and his marriage dissolved. He
sued to recover damages, under both the FTCA and *Bivens*.

The U.S. Supreme Court, reversing the court of appeals, dismissed the lawsuit and both of Stanley's claims. The Supreme Court reasoned that the Constitution had given Congress "plenary control over rights, duties, and responsibilities in the framework of the Military Establishment". Thus, the "unique disciplinary structure" of the military and the "comprehensive internal system of justice to regulate military life" that Congress had established were "special factors counseling hesitation" before implying a right to bring a *Bivens* action. *Id.* at 679, quoting *Chappell*, 462 U.S. at 301-02, 304. Under *Feres*, that "hesitation" applies, not only to instances where the plaintiff may have been following the orders of a military superior, but whenever the injury complained of was "incident to service". *Id.* at 681-82.

The Supreme Court acknowledged that its rule of "special factors counseling hesitation" reflected "a policy judgment" that was "protective of military concerns", and that there was no clear "right answer" in balancing the special status of the military and the rights of persons in the military. *Stanley*, 483 U.S. at 681. The Court expressed concern about fashioning a less protective rule that might permit suits calling "military discipline and decisionmaking" into question, or intruding upon "military matters"—for example, "compelled depositions and trial testimony by military officers concerning the details of their military commands"—and favored "a line that is relatively clear and that can be discerned with less extensive inquiry into military matters". *Id.* at 682-83. The Supreme Court held that Stanley's suit could not proceed, neither under the FTCA, nor under *Bivens*.

In *Wake v. United States*, 89 F.3d 53 (2d Cir. 1996), the plaintiff was in her third year of schooling at Norwich University.[4] The plaintiff had served in the Navy before admission

---

[4] Norwich University is a private college designated by Title 10 as "a senior military college" whose cadets *may* be ordered to active duty upon graduation. *See* 10 U.S.C. § 2111(a).

and was "enlisted as an inactive member" in the Navy Reserves and in the Navy Reserve

Officers Training Corp ("NROTC"), subject to reactivation in the event that she withdrew from

the NROTC. She sustained permanent injuries in a car accident while riding in a vehicle owned

by the NROTC, en route to a pre-commissioning physical examination required by the NROTC.

She sued the United States and various military personnel under the FTCA and *Bivens* for,

among other things, violations of her Fifth Amendment right to due process, the car driver's

negligence, and negligence in advising her how to pursue compensation for her injuries. *Id.*

at 56.

The Second Circuit affirmed the dismissal of Wake's claims because it

determined that, as an enlisted service member, her injuries were "incident to service" and thus

barred by *Feres*. *Id.* at 62. In *Wake*, the court stated that to determine whether an injury occurs

"incident to service", "the courts consider various factors, with no single factor being

dispositive". *Id.* at 58. Such factors include, but are not limited to: the individual's status and

relationship to the military at the time of the injury; the relationship of the activity which created

the injury to the individual's service in the military; the location in which the injury occurred;

whether the activity is limited to military personnel; and whether the service member was taking

advantage of a privilege or enjoying a benefit conferred as a result of military service. *Id.* at 57-

58.

In applying the factors to the plaintiff, the Second Circuit focused on her

membership in NROTC and that she was an enlisted member of the Naval Reserves. *Id.* The

Second Circuit noted that "numerous circuits have found that individuals on reserve status fall

within the *Feres* bar". *Id.* at 59. *See also Collins v. United States*, 642 F.2d 217, 220 (7th Cir.

1981) (FTCA suit by cadet at Air Force Academy for medical malpractice dismissed because

18

under *Feres* injuries occurred "incident to service"); *Cioca v. Rumsfeld,* 720 F.3d 505 (4th Cir. 2013) (suits for sexual assault incurred while on active duty in the military dismissed); *Klay v. Panetta*, 785 F.3d 369 (D.C. Cir. 2014) (same); *Marquet v. Gates*, No. 12 Civ. 3117, (S.D.N.Y. Sept. 11, 2013) (suit by fourth year cadet that West Point's indifference to rape by upper classman dismissed).

The Second Circuit found that the facts in the record, viewed in light of the rationales underlying the *Feres* doctrine, showed that Wake's injuries occurred "incident to service". The court noted that Wake was travelling in a Navy-owned vehicle at the time of her injuries; the driver of the vehicle was a non-commissioned officer acting within the scope of his employment; Wake was with other ROTC cadets at the time of her injuries, being transported back to Norwich University from a flight physical examination conducted at a Navy base; the purpose of the trip was for a military physical examination; and Wake was issued a travel order assigning her to temporary duty and authorizing her travel. *Id.*

Importantly, the Second Circuit further emphasized that courts should consider the three broad rationales underlying *Feres* when determining whether an injury occurred "incident to service": "(1) the 'distinctly federal' relationship between the Government and members of its armed forces; (2) the existence of a uniform system of 'generous statutory disability and death benefits' for members of the military; and (3) the need to preserve the military disciplinary structure and prevent judicial involvement in sensitive military matters." *Id.* at 57, 61-62. With respect to the first rationale, the court held that due to the federal nature of the relationship, Wake should be barred from pursuing state tort law claims. Secondly, the court found that Wake had already received generous benefits from her 100% disability rating from the Department of Veteran Affairs. Finally, the court found the third rationale also weighed in favor

of invoking the *Feres* doctrine, "to avoid civilian court scrutiny of military discipline and policies such as those necessarily implicated by an accident in a military vehicle driven by a military officer" and "to avoid disruption of military order". *Id.* at 62.

1.    *The Status of Plaintiff Jane Doe*

Doe brings two claims against Hagenbeck and Rapp under *Bivens*: for violation of her due process rights, and for violation of her right to equal protection of the laws.

A.    *Due Process Claim*

Doe's due process claim alleges that the actions of the Individual Defendants, in failing properly to train, supervise, and punish cadets concerning sexual assaults, were a proximate cause of her rape by a fellow cadet. I hold, however, that these allegations fail to show a plausible and sufficient factual nexus to show proximate cause for the relief she seeks, and that this portion of her complaint should be dismissed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

An action to vindicate a constitutional right, such as a *Bivens* claim, employs the tort principle of proximate causation. *Higazy v. Templeton*, 505 F.3d 161, 175 (2d Cir. 2007). "Proximate or legal cause is defined as that 'which in a natural sequence, unbroken by any new cause, produces that event and without which that event would not have occurred.'" *Caraballo v. U.S.*, 830 F.2d 19, 22 (2d Cir. 1987) (quoting *Rider v. Syracuse Rapid Transit Ry. Co.*, 171 N.Y. 139, 147 (1902)). In order for Doe's complaint to survive a motion to dismiss her *Bivens* claim against Hagenbeck and Rapp for violation of her due process rights, she must adequately plead that their acts proximately caused her rape.

Doe's complaint on its face shows that the actions taken by Hagenbeck and Rapp were too attenuated from Doe's rape to be a proximate cause of her injuries. Doe alleges that the

Individual Defendants fostered an environment of sexual hostility and toleration of violence against women by creating a culture of blaming the victim, discouraging female cadets from reporting sexual assault, ineffectively punishing cadets who perpetrated sexual assault, providing inadequate resources for sexual assault victims, and marginalizing women by failing to recruit female cadets and faculty. Doe further alleges that the Individual Defendants turned a blind eye to the inappropriately high number of sexual assault statistics which had repeatedly been brought to their attention, reflecting a deliberate indifference to Doe's due process rights.

However, the nexus between the acts, or failures to act, that Doe alleges and her rape are too tangential. The complaint does not show that without the policies implemented by Hagenbeck and Rapp, Smith (Doe's fellow cadet) would not have taken the actions he did on the night of May 8, 2010, or that she would not willingly have accompanied him. Doe alleges that Smith came to her room after hours, invited her to take a walk with him in violation of curfew, took her to an academic building, drank alcohol, and then had sex with her, without her consent, when she was unconscious due to drinking alcohol after taking a prescribed sedative. As the complaint fails adequately to plead that actions of Hagenbeck and Rapp proximately caused the events of that night, this count of Doe's *Bivens* claim fails.

### B.   *Equal Protection Claim*

Doe's equal protection claim is different. The cognizable injury in Doe's equal protection claim is that she was denied her constitutionally-protected right to an "equal opportunity to aspire, achieve, participate in and contribute to society based on [her] individual talents and capacities". *VMI*, 518 U.S. at 532. As the line of cases descending from *Feres* demonstrate, the primary reason for exercising judicial restraint with cases concerning the military is "the need to preserve the military disciplinary structure and prevent judicial

involvement in sensitive military matters". *Wake*, 89 F.3d at 57. As the Supreme Court stated in *United States v. Shearer*, "*Feres* seems best explained by the 'peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the [FTCA] were allowed for negligent orders given or negligent acts committed in the course of military duty.'" 473 U.S. 52, 57 (1985) (quoting *U.S. v. Muniz*, 374 U.S. 150, 162 (1963) (quoting *U.S. v. Brown*, 348 U.S. 110, 112 (1954))). It is "the unique disciplinary structure of the Military Establishment and Congress' activity in the field [which] constitute 'special factors' which dictate that it would be inappropriate to provide enlisted military personnel a *Bivens*-type remedy against their superior officers." *Stanley*, 483 U.S. at 679 (quoting *Chappell*, 462 U.S. at 304).

However, Doe's complaint does not take issue with the "military disciplining structure". *Wake*, 89 F.3d at 57. She asks for no special rule for, or review of, her status as a West Point cadet. *Cf., Chappell*, 462 U.S. at 303. She asks for no dispensation regarding her duties and responsibilities. *Cf., Stanley*, 483 U.S. at 679-680. All she asks for is the dignity of equality – that there be no special rules, or practices, at West Point that favor male cadets over female cadets, or vice-versa, or that tend to degrade one sex as a means to raise or motivate another.

Doe's complaint alleges rampant hostility manifested against females in numerous aspects of life at West Point, depriving women of equal opportunity to receive and benefit from a West Point education. Only female cadets were required to be tested for STDs, and were told that it was their responsibility to prevent the spread of STDs. Women were taught self-defense and discouraged from reporting rapes, as if it was they who were responsible for male transgressions, and to bear such events as mild mishaps if they were not successful in

warding them off. The marching chants of cadets degraded women while they amused or motivated men. And, as the complaint alleges, defendants Hagenbeck and Rapp were indifferent to their constitutional and statutory obligations to foster equal conditions and equal protection between male and female cadets.

Doe's complaint accuses the Individual Defendants of fostering policies and practices perpetuating the nation's "long and unfortunate history of sex discrimination". *VMI*, 518 U.S. at 531 (1996) (quoting *Frontiero v. Richardson*, 411 U.S. 677, 684 (1973)). The complaint alleges that defendants Hagenbeck and Rapp, even while knowing that DoD found West Point to be only 'partially in compliance' with sexual assault and harassment policies, and that West Point's prevention training was 'deficient', and that West Point failed to comply with numerous DoD directives to reduce rape and sexual assaults, failed to act to ensure that female cadets had equal protection of the laws. "[G]ender classifications are invalid," the Supreme Court held, and a reviewing court must strike them down unless a "proffered justification is 'exceedingly persuasive.'" *VMI*, 518 U.S. at 532-33. Unless the government shows that a challenged classification "serves 'important governmental objectives and that the discriminatory means employed' are 'substantially related to the achievement of those objectives,'" the classifications violate the constitutional guarantee of equal protection of the laws. *Id.* at 533 (quoting *Wengler v. Druggists Mut. Ins. Co.*, 446 U.S. 142, 150 (1980)). Defendants have not yet made that showing; perhaps, after this aspect of their "12(b)(6) motion" is denied, their answer and proofs may rectify this deficiency. But, without such a showing, Defendants' motion to dismiss Plaintiff's equal protection claim should not be granted.

In *VMI*, the Supreme Court was faced with a policy that facially excluded women – a policy of clear gender discrimination. Women were not excluded from West Point, but the

burdens foisted upon them were almost as insidious, with direct effects to their morale, mental and physical stability, and ability to persevere. The "factors counseling hesitation" stated in *Stanley*, 483 U.S. at 681, cannot become factors commanding paralysis without doing violence to *VMI*, and the right of female cadets to Equal Protection of the laws. Federal courts not only have the jurisdiction, but the obligation, to uphold constitutional rights, at least until a showing is made that good order and discipline in the military are likely to be compromised. If women constitutionally must be admitted to military colleges, and courts have jurisdiction to enforce such rights of entry, the courts may not abstain from jurisdiction if women thereafter are deprived of their constitutional rights. The law demanding a woman's entry through the schoolhouse gates must not abandon its protection beyond the gates if a woman's right to equal protection continues to be violated. Hagenbeck and Rapp cannot rely on *Feres* if, as alleged, their conduct caused gender discrimination against women, unless it is evident from the complaint, or shown by an answer and subsequent proofs, that military discipline or its command structure is compromised.

At this point in the litigation, Doe's equal protection claim of her complaint against Hagenbeck and Rapp has sufficient legal basis to withstand Defendants' motion to dismiss.[5]

---

[5] Not every complaint by a female service person against her commander gives rise to an equal protection argument to invoke the jurisdiction of the district courts. In the instant case, Plaintiff was a second-year cadet at a military college. A cadet may resign from West Point during her first two years without incurring financial obligations to the United States. 10 U.S.C. § 4348. If, however, a cadet resigns during her third or fourth year, she may be required either to enlist as a soldier in the armed forces, and/or to reimburse the military "in an amount that bears the same ratio to the total cost of advanced education provided [the cadet] as the unserved portion of active duty." *See* Cadet Oath, 10 U.S.C. § 4348. Since Doe resigned before entering her third year at West Point, she had no obligation to enlist as a soldier or enter into any military status, or to pay any money. She was a student, entitled as much to equal protection of the laws as the plaintiff who was denied entrance into VMI. *See United States v. Virginia*, 518 U.S. 515 (1996). Plaintiff has adequately pled plausible facts showing discriminatory treatment to

B. *Doe's Claims against the United States Under The Federal Tort Claims Act*

Doe sues the United States under the FTCA for the existence of the sexually

hostile environment at West Point, which she alleges led to her rape. Specifically, Doe sues the

United States for negligent supervision of male cadets and staff members, negligent training of

male cadets and staff members, the negligence of the Individual Defendants and other staff

members, negligent infliction of emotional distress, and abuse of process for failure to

investigate and punish incidents of sexual assault.

Under the FTCA, the United States waives sovereign immunity and authorizes

claimants to sue for money damages in the federal district courts for injuries caused by its

employees' negligence or wrongful acts or omissions. The FTCA gives federal district courts

jurisdiction over:

> civil actions on claims against the United States, for money damages, accruing on and
> after January 1, 1945, for injury or loss of property, or personal injury or death caused by
> the negligent or wrongful act or omission of any employee of the Government while
> acting within the scope of his office or employment, under circumstances where the
> United States, if a private person, would be liable to the claimant in accordance with the
> law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). There are several statutory exceptions, including:

> Any claim based upon an act or omission of an employee of the Government, exercising
> due care, in the execution of a statute or regulation, whether or not such regulation may
> be valid, or based upon the exercise of performance or the failure to exercise or perform a
> discretionary function or duty on the part of a federal agency or an employee of the
> Government, whether or not the discretion involved be abused.

---

females as a class, and that the allegations will not affect the command structure of the military or the
disciplinary authority of commanding officers. *Cf. with Stanley*, 483 U.S. at 681.

25

28 U.S.C. § 2680(a). Defendants' motion to dismiss argues that Doe's claim for recovery under the FTCA is legally insufficient because Hagenbeck and Rapp were employees of the government performing discretionary functions.

Hagenbeck and Rapp had the responsibility under applicable statutes and regulations to implement policies and practices to reduce and eliminate discrimination based on gender. How they did it, and the extent to which they did it, were discretionary functions, barring an FTCA claim against the United States.

The exception to FTCA liability, based upon the performance of discretionary duties, covers acts that "involve an element of judgment or choice". *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (internal quotations and citations omitted). An action is considered discretionary for purposes of the exception when implementation of a statute or regulation allows for, or requires, that the official balance competing needs and make choices based on public policy considerations. *See generally Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 535-40 (1988); *Coulthurst v. United States,* 214 F.3d 106, 108-10 (2d Cir. 2000).

Doe claims that Hagenbeck and Rapp were responsible for policies and practices creating pervasive gender discrimination and violence to women, including the rape of Doe, and that failure to punish the perpetrator or remedy the policies and practices demonstrated their tolerance of sexual assaults of female cadets. However, Hagenbeck's and Rapp's policies and practices implemented 10 U.S.C. § 4361 and 32 C.F.R. § 103.5. Pursuant to 32 C.F.R. § 103.5(f)(1), the Secretaries of the Military Departments are required to "[e]stablish departmental policies and procedures to implement the SAPR [Sexual Assault Prevention and Response] Program" consistent with the provisions of this part and DoDI [United States Department of Defense Instructions] 6495.02", which is the SAPR Program Procedures ("DOD Directive

6495.02"). The regulation directed the Secretary to do things like, "influenc[e] policy; chang[e] organizational practices; foste[r] coalitions and networks, educat[e] providers, promot[e] community education, and strengthe[n] individual knowledge and skills". 32 C.F.R. § 103.5(f)(5). DOD Directive 6495.02 ordered each commander to "implement a SAPR prevention program" that, among other things: (1) "[e]stablishes a command climate of sexual assault prevention predicated on mutual respect and trust, recognizes and embraces diversity, and values the contributions of all its Service members"; (2)"[e]mphasizes DOD and Military Service policies on sexual assault and on the potential legal consequences for those who commit such crimes"; and (3) that "[i]dentifies and remedies environmental factors specific to the location that may facilitate the commission of sexual assaults". (*See* DOD Directive 6495.02, at pp. 43-44, *available at* http://www.dtic.mil/whs/directives/corres/pdf/649502p.pdf.)

Defendants correctly argue that the implementation of the sexual assault and harassment prevention programs and the institution of reporting mechanisms for sexual assault involved a large amount of discretion by Hagenbeck and Rapp. *Gaubert*, 499 U.S. at 322. The directives at issue here identified large, amorphous objectives and goals and did not provide concrete clear ministerial orders. Furthermore, there is no doubt that the issue of sexual assault in the military, and at West Point, is a public policy issue that requires Hagenbeck and Rapp to balance competing needs and make choices based on public policy considerations.[6]

---

[6] The issue of sexual assault in the military was spotlighted in United States Congressional hearings after a 2013 Pentagon Report estimated that 26,000 sexual assaults took place in the armed services in 2012. President Obama spoke on the issue, expressing his disapproval and affirming the need to end discrimiantion. *See* Lusita Lopez Torregrosa, "Women in Congress Confront the Military on Sexual Assault," N.Y. Times, May 28, 2013, *available at*
http://rendezvous.blogs.nytimes.com/2013/05/28/women-in-congress-confront-the-military-on-sexual-assault/?_php=true&_type=blogs&_r=0.  There was a public outcry and debate, bills were drafted, and legislation ultimately passed. *See* Jonathan Weisman and Jennifer Steinhauer, "Negotiators Reach Compromise on Defense Bill," N.Y. Times. Dec. 9, 2013, *available at*

27

Doe's FTCA claims criticize these discretionary actions and decisions and base her claims on the way the Individual Defendants performed their responsibilities. However, in implementing the policies and procedures at issue in this case, Hagenbeck and Rapp exercised a large amount of discretion which they used to balance and weigh issues of public importance. These claims are therefore excepted from the FTCA's reach and not available to Doe in this lawsuit and, accordingly, are dismissed.

### C. *Doe's Breach of Contract Claim against the United States*

Lastly, Doe sues the United States for a breach of contract. She claims that her enrollment at West Point created an educational services contract with the United States.

The U.S. District Courts and the Court of Claims have coordinate jurisdiction over any "civil action or claim against the United States, not exceeding $10,000 in amount . . . upon any express or implied contract with the United States." *See* 28 U.S.C. § 1346(a)(2) (the "Little Tucker Act"). This permission to sue the United States waives sovereign immunity.

Doe alleges that when she signed an Oath of Allegiance on June 30, 2008, she and the United States effectively entered into an educational services contract. She alleges that she promised to serve in the Army for eight years, including five in active duty, and the United States promised to give her a free four-year education at West Point, and room and board.

"[A]ny agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the Government, specifically: mutual intent to contract including an offer and acceptance, consideration, and a Government

http://www.nytimes.com/2013/12/10/us/politics/house-and-senate-reach-compromise-on-pentagon-bill.html.

representative who had actual authority to bind the Government." *Massie v. U.S*, 166 F.3d 1184,
1188 (Fed. Cir. 1988) (quoting *Trauma Serv. Group v. U.S.*, 104 F.3d 1321, 1326 (Fed. Cir.
1997)).  An educational services contract can be the basis of such a claim.  The United States,
itself, has sued prior cadets successfully when they failed to reimburse the United States in
accordance with the contract's terms. *See, e.g., United States v. China*, 2007 WL 775615
(D.S.C. Mar. 8, 2007); *United States v. Chrzanowski*, 358 F. Supp. 2d 693 (N.D. Ill. 2005);
*O'Rourke v. Dep't of Air Force*, 2005 WL 3088611 (N.D. Ohio Nov. 16, 2005).

   However, Doe's contract claim fails because the United States performed the
services it agreed to perform.  If Doe is correct and is able to prove that the pervasive sexual
violence and gender discrimination at West Point constituted a failure to provide her equal
protection of the laws, she may be entitled to recovery under *Bivens*, but not recovery for breach
of contract.  The government did not stop providing Doe with an education, room, and board.
The government is not suing Doe for an alleged failure to reimburse it.  Doe's claim of
constitutional violations is a claim sounding in tort, and the Little Tucker Act specifically
excludes from jurisdiction cases "sounding in tort."  28 U.S.C. § 1346(a)(2).

## III. Conclusion

   Doe's claim, that the policies and procedures created and implemented by
Hagenbeck and Rapp violated her constitutional right to equal protection of the laws, is legally
sufficient to proceed at this stage of the proceedings.  Defendants' motion to dismiss Doe's
*Bivens* claims is GRANTED with respect to Doe's Due Process claim (Count one), and DENIED
as to Doe's Equal Protection claim (Count two).  Defendants' motion to dismiss Doe's claims
under the FTCA and the Little Tucker Act are GRANTED (Counts three and four).

Accordingly, Counts one, three and four of the Amended Complaint are dismissed. Defendant the United States of America is also dismissed from the case.

Plaintiff shall amend the caption and the allegations of her complaint to conform to this decision by Monday, May 11, 2015. The individual defendants shall have until Monday, June 8, 2015, to answer. I shall meet with the parties, through counsel, on Friday, July 10, 2015, at 10:00 a.m. to agree to a case management plan.

SO ORDERED.

Dated:     April 13, 2015
           New York, New York

ALVIN K. HELLERSTEIN
United States District Judge